63  457<br>73  412

REDD *v*. STATE.

## Opinion delivered February 20, 1897.

ACCOMPLICE—WHO IS.—A witness jointly indicted with two defend-
ants on trial is an accomplice where the indictment against him
is undisposed of, and there is evidence tending to connect him
with the crime charged, though such evidence is meagre and
unsatisfactory; and his testimony, uncorroborated, is insufficient
to support a conviction of the defendants.

EVIDENCE—NON-EXPERT TESTIMONY.—Upon the question whether
deceased was murdered or committed suicide, it being shown that
he held a knife loosely in his hand when found dead, it was error
to admit the evidence of non-experts that certain persons sup-
posed to have committed suicide with knives, and whose bodies
they afterwards saw, each held a knife tightly grasped in his
hand, in the absence of other proof that they had committed sui-
cide—even if such evidence were otherwise admissible.

SAME—WHEN PREJUDICIAL.—The error of admitting incompetent evi-
dence tending to  convict  defendant of  the crime of murder is not
cured by proof of his extrajudicial confession, since the confession
would not support a conviction unless corroborated by evidence
that the death was caused by a criminal agency.

SAME.—The error of admitting non-expert testimony tending to prove
that a suicide would be likely to hold the knife with which he
killed himself tightly grasped in his hand is not cured by intro-
ducing expert testimony to the same effect.

INSTRUCTION—WEIGHT OF EVIDENCE.—It is error to instruct the jury
that confessions, "when deliberately and voluntarily made, are
deemed to be among the most effectual proofs of the guilt of the
defendant."

SAME—CONFESSION OF ACCOMPLICE.—It is error in a murder case to instruct the jury that if they believe that the defendants, or either of them, confessed to the killing of the deceased, and that both of the defendants participated in the killing, they may convict, as the confession of one defendant is no evidence against the other.

Appeal from Drew Circuit Court.

MARCUS L. HAWKINS, Judge.

*H. King White* for appellant.

Frank McCoy was an accomplice. Sand. & H. Dig., sec. 1451. And defendant could not be convicted on his uncorroborated testimony. *Ib.* sec. 2230. Instructions Nos. 11 and 12 asked by defendant are the law. 122 Ill. App. 79.

*E. B. Kinsworthy*, Attorney General, for appellee.

BUNN, C. J. This is an indictment for murder in the first degree, tried and determined in the Drew circuit court at its fall term, 1896, resulting in the conviction of both the defendants of the crime charged against them, and judgment and sentence accordingly, from which they appealed to this court.

On the 13th day of May, 1896, W. F. Skipper, a saw mill operator and merchant of Baxter, in said county, was found dead on the lower bank of Bayou Bartholomew, between said town and his saw mill, lying with his face downwards, and resting upon his crossed hands with palms down. There were two wounds, one as if made by a sharp knife across the throat, severing the jugular vein, and the other by a pointed instrument, penetrating the carotid artery. A pocket knife, with one blade open, was found in his right hand, but at the time the muscles of the hand were relaxed, so that the knife rested loosely in the hand. Two pools of blood from the wounds in the neck, one on either side, and under the arms, were discovered. In the bayou, just opposite where the body was found,

there was a raft of saw logs destined for the mill below but which had in some way or for some reason been stopped at that point, and perhaps some of the logs had been detached, and were separated from the raft, but lay near by. The bayou had been somewhat swollen at the time of the death of Skipper, but when a particular examination of the locality was made, a few days afterwards, the water had fallen eighteen inches or two feet, and many tracks of persons wading in the water before the fall appeared in the wet ground after the water had receded therefrom. Among these tracks appeared those of the deceased; at least tracks answering to the peculiarly shaped shoes he wore at the time of his death. There were spots of blood also found on and about the logs, which indicated that persons about the time of the death had stood or walked on these logs. Various other indications of a struggle were observable at and near the place, and detailed in evidence. The higher or second bank of the bayou hid the body from the view of those passing along the neighboring road. ·

The first question to be solved was whether the deceased was murdered or came to his death by his own hands. In favor of the theory that it was a suicide, the evidence was quite meagre, and all having reference to the state of physical health of the deceased, and his pecuniary embarrassments, claimed by the defense to be circumstances sufficient to account for the suicide. On the other hand, the position of the body when found, the testimony of an expert physician and surgeon as to the contraction and relaxation of the muscles of the hands of one committing suicide by cutting his throat, and some testimony of non-experts as to whether the muscles were contracted or relaxed in isolated, but similar, cases coming under the witnesses' observation, all, it was claimed by the prosecution, went to show more or less

conclusively that the deceased had not committed suicide, and was therefore murdered. The testimony, however, upon which the verdict in this case is mainly founded is certain confessions and statements of defendant Redd, made to and detailed by others as witnesses on the trial, and, as to defendant Johnson, certain circumstances detailed by witness McKay, and sayings and conduct of Johnson testified to by McKay and others, which it was thought tended to incriminate that defendant.

The motion for new trial, omitting the usual formal grounds, sets forth the following grounds: inadmissibility of the testimony of W. F. Slemons; also the inadmissibility of the testimony of L. E. Morgan and that of W. C. Spain; the error of the court in giving the tenth instruction asked by the state, and in overruling the tenth and twelfth instructions asked by the defendant; and that the verdict was contrary to the evidence.

For the purpose of determining the question whether or not the deceased came to his death by murder or suicide, the expert testimony of a physician was taken as to whether or not, in similar cases, the muscles of the hands would be apt to remain rigid or relax after death, the fact in this case being that the pocket knife found in the hand of deceased was loose, and not held by a rigid grasp. In addition to this expert testimony, and apparently in support of it, the non-expert testimony of W. F. Slemons and L. E. Morgan was introduced to prove by them, in the particular cases of suicide they had witnessed, committed in the same way as this one, if suicide at all, whether the muscles of the hands were contracted or relaxed after death.

While there are authorities which apparently sanction the introduction of such non-expert testimony, yet we think, upon the whole, such testimony is inadmissible, but that in the present case, however, the error

was not prejudicial as to the case against Redd, especially since the confessions of that defendant probably furnished the only grounds upon which he was convicted, and his confession, as a matter of course, included the fact of the murderous killing, as well as the connection of that defendant with it.

As to the objection to the giving of the tenth instruction asked by the state, we do not think it well made, as that instruction substantially announces the law on the subject.

We think there was no prejudicial error in refusing the tenth instruction asked by the defendant, as the first and second instructions given by the court on its own motion, according to the uniform ruling of this court, substantially covered all the ground sought to be covered by the instruction refused.

The twelfth instruction asked by the defendant, and refused by the court, really has no evidence to support it, as it does not appear that any of the witnesses testified in consideration of an immunity from prosecution of charges pending against them, unless we are permitted to judge by inference alone. Besides, we think the instructions given fairly submitted the case to the jury.

We think the statements made by defendant Redd to witnesses Henry and McCoy, and overheard by witness Spain, were voluntarily made, and his confessions and other statements made to these witnesses and detailed by them on the trial amount to sufficient evidence to justify the verdict of the jury against him, even treating the testimony of McKay as that of an accomplice.

The question as to whether or not McKay was an accomplice was not submitted to the jury by the trial court, and is not raised expressly in the record, but was raised in argument before us on the question of sufficiency or want of evidence, and we do not feel at liberty

*As to who is an accomplice.*

to disregard it in a case of such serious consequences. It is the unquestioned rule that where that question in any case is submitted to the jury, its finding on the subject is final, unless the testimony shows conclusively that the witness was an accomplice. The question moreover is one of mixed law and fact. *Edmonson* v. *State*, 51 Ark. 115; *Melton* v. *State*, 43 Ark. 367.

The question not having been submitted to the jury, and in view of the fact that witness was jointly indicted for this offense with the two defendants on trial, that the indictment against him is still undisposed of in any way, and the extraneous evidence adduced on the trial tending to connect the witness with the commission of the crime of murdering Skipper, although somewhat meagre, and not at all satisfactory, as may be admitted, we, or at least a majority of us, are of opinion that the witness McKay is to be regarded as an accomplice, and his testimony is admissible under the rules governing that of an accomplice.

The language of the statute on the subject, as digested in Sandels & Hill's Digest, is as follows :

"Section 2911. 'When two or more persons are indicted in the same indictment, either may testify in behalf of or against the other defendant or defendants." Act approved March 2, 1893.

"Section 2246. When two or more persons are indicted in the same indictment, and the court is of opinion that the evidence in regard to a particular individual is not sufficient to put him on his defense, it must, on motion of either party desiring to use such defendant as a witness, order him to be discharged from the indictment, and permit him to be examined by the party so moving. The order is an acquittal of such defendant, and a bar to another prosecution for the same offense." Criminal Code, § 233.

"Section 2230. A conviction cannot be had in any case of felony upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. Provided, in misdemeanor cases a conviction may be had upon the testimony of an accomplice." Criminal Code, § 240.

The testimony of witness McKay, as concerns defendant Johnson, was to the effect that while Redd, Johnson, and others of the mill hands had been previously taking their meals at his boarding house, yet at the time of the death of Skipper none were eating at his house except Johnson; that, on the day previous to the death of Skipper, Johnson, who was the engineer at the mill of Skipper & Lefew, told him (witness, whose residence it seems was on the road leading from the town of Baxter, where Skipper's store was located, to the saw mill, a short distance up the Bayou Bartholomew from Baxter) "to tell Mr. Skipper that there were some logs down the drift [which] were about to get away, and to tell him the next morning when he passed my (witness') house." This is the basic evidence upon which defendant Johnson was sought to be shown as connected with the murder of Skipper. The theory of the prosecution was that this direction by Johnson through McKay to Skipper was part and parcel of the general scheme to lure the deceased to the secluded spot where he was murdered.

Witness McKay said further, in this connection, that about 6 o'clock a. m. of the day Skipper's body was found, Johnson came to his house for breakfast, and seemed to be in a great hurry, so much so that he finally went off without his breakfast, saying that he had some work to do at the mill that day. He went off just as witness was sitting down to the table to eat breakfast.

Witness said about 8 or 9 o'clock a. m. the same morning Johnson and another man passed by his house in a cart going towards Baxter from the mill when Johnson asked him if he wanted to talk to Redd; and that he saw no more of him during the day until at supper time (Johnson explains his stay in Baxter until the afternoon), when Johnson told witness not to say anything to anybody concerning him about the logs.

We think the testimony of McKay is not corroborated so as to show the connection of Johnson with the killing, as required by the statute, and that, therefore, the verdict of guilty thereon was not authorized.

Affirmed as to Redd, and reversed as to Johnson.

### On Rehearing as to Redd.

Opinion delivered April 24, 1897.

RIDDICK, J. The conviction of appellant Redd for the murder of Skipper was based upon circumstantial evidence, and upon confessions said to have been made by him. The body of Skipper was found lying on the bank of the bayou in Drew county, of this state. There was a wound in the left side of the throat. The body lay face downward. The forehead rested on the crossed hands, and in the right hand was a knife held loosely, with blood upon the open blade. On the ground, under the arms, was a pool of blood which had flowed from the wound in the throat. The medical expert who described this wound said that it was about an inch and a half long, made downward and forward with a sharp knife, which seemed to have jumped and cut the skin about the thirty-second part of an inch, and then went in, and severed the external jugular vein and partially severed the carotid artery. A short distance from the body of the deceased, his vest was found hanging in a tree with his watch in the pocket. His hat was gone,

but his clothing was not torn, nor were there any other wounds upon the body indicating a struggle.

Afterwards the defendant Redd was indicted jointly with Johnson and McKay for the murder of Skipper. Upon the trial counsel for the state undertook to show by the testimony of experts, and by proof of certain facts and circumstances, that the death of Skipper was not caused by himself, but by the hand of another. For this purpose, they introduced a medical expert, who testified that, in case of suicide by stabbing, the deceased would be likely to hold the knife tightly grasped in the hand, so that after death it would be extracted with difficulty. To further substantiate this theory that in suicide by stabbing the knife would be held tightly clasped in the hands of the deceased, the state introduced two non-expert witnesses. One of whom testified that he saw a Mr. Meek after his death by suicide, as he was informed, and that in his hands was a knife tightly clasped. In seeming contradiction to this statement, the witness, so the record shows, then added: "When I was there, he did not have the knife in his hands." The other witness testified as follows: "I saw Richard Jeter after he was killed. It is supposed that he killed himself in the night. It was one o'clock the next day when I saw him. He had a dagger in his hands grasped perfectly tight, and it took some effort to remove it." The appellant objected to the testimony of these two witnesses, and moved to exclude it; which motion being overruled, he excepted. We feel fully convinced that this testimony was improperly admitted. If we should concede that the fact that another person who had committed suicide by stabbing himself still held the knife tightly clasped in his hands after death, was proper evidence for the jury to consider in this case—a proposition we consider at least doubtful—yet it is, clear that the testimony here was based on nothing but,

*Admissibility of non-expert testimony.*

hearsay. No witness testified that these men, found after death with knives in their hands, committed suicide, but only that it was supposed they had done so. This testimony, being based, not upon a fact of which the witnesses testified from their own knowledge, but only upon supposition, was clearly hearsay and incompetent. But it was allowed to go to the jury as competent evidence tending to show that in this case the deceased did not commit suicide. The jury might infer from this evidence that, as Skipper did not hold the knife tightly clasped in his hand, he therefore did not commit suicide. The evidence was calculated to effect their opinion upon a vital point in the case.

When evidence prejudicial.   But it is argued on the part of the state that the admission of this testimony could not have been prejudicial, for the reason that the jury must have believed the confession of appellant admitted as evidence, and, if that confession was true, Skipper did not commit suicide. But this contention is not sound, for, if such confession was made, it was extrajudicial, and, to sustain a conviction, it must be corroborated by other evidence tending to prove the *corpus delicti.* In a case of homicide, the *corpus delicti* consists of two fundamental facts: (1) The death of the person alleged to have been killed; (2) the fact that a criminal agency was the cause of such death. In this case the death of Skipper is admitted, but it was still necessary to show by evidence outside of the confession that his death was the result of the criminal agency of another, for such fact cannot be established by the confession alone, and the presiding judge so instructed the jury in this case. *Pitts* v. *State,* 43 Miss. 472; Wharton's Criminal Evidence (8th Ed.,) § 633; 1 Greenleaf, Ev. § 217. In order to cover this point, and show that Skipper was killed by another, and not by his own hand, the testimony of the two witnesses just referred to was

introduced. The error in admitting this testimony was not cured by the proof of the confession, for it was introduced to corroborate the confession.

If it be said that this evidence was harmless, for the reason that the jury may have reached the same conclusion from the testimony of the physician on this point, we must answer that they may have done so, but we are not able to say that they did do so. The testimony of one witness may make no impression, but that of another may carry conviction. We cannot look into the minds of the jury to discover what effect this testimony had upon their conclusions as to the guilt of the defendant; but, as it was incompetent, was admitted against the objection of appellant, and bore upon a material point in the case, we must hold that its admission was prejudicial error, and entitled the appellant to a new trial. Elliott's Appellate Procedure, § 632.

We are further asked to hold that the circuit judge erred in giving to the jury instruction No. 10;* but it is not necessary to pass on this question further than to say that a majority of the judges are of the opinion that such instruction would be better given in another form. It states among other matters that confessions, "when deliberately and voluntarily made, are deemed to be among the most effectual proofs of the guilt of the defendant." This portion of the instruction is taken from Greenleaf on Evidence, but the learned author, in making this statement, was not stating a rule of law, but was discussing the question as to what weight should be

*Instruction as to weight of confession.*

* NOTE.—Instruction No. 10, given at plaintiff's instance, is as follows: "The court instructs the jury that, while the law recommends caution in receiving confessions of guilt, yet, when deliberately and voluntarily made, they are deemed to be among the most effectual proofs of the guilt of the defendant; and if you believe from the evidence that the defendants, or either of them, confessed to the killing of W. F. Skipper, as charged in the indictment, and that both of the defendants participated in the killing, you may convict."

attached to confessions as evidence of guilt. His discussion of this question is marked by great wisdom and judgment, and has called forth frequent approval; but under our practice, where the judge is forbidden from expressing to the jury opinions as to the weight of evidence, this extract from his discussion is of doubtful propriety as an instruction to a jury. It is true that the circuit judge does not say that the confession here was deliberately and voluntarily made, but the jury might infer that the intention was that they should give great weight to such confession, provided it was deliberately and voluntarily made. Yet, even if the confession be deliberately and voluntarily made, it is still for the jury, and not the judge, to determine what weight to

Admissibility of confession of accomplice. give it. But this instruction is subject to another objection more serious than the one noticed, for it says to the jury that if "you believe that the defendants, or either of them, confessed to the killing of Skipper, as charged in the indictment, and that both of the defendants participated in the killing, you may convict." The jury might understand from this language that if either of the defendants made a confession, and the jury believed from such confession that both were guilty, they should convict both. And the jury did convict both Redd and Johnson, who were tried together; but the judgment as to Johnson has been heretofore reversed, for want of evidence to support it. We therefore think that if there is another joint trial, this instruction should not be given again in its present form.

In a case such as we have here, where the confession is established mainly by the testimony of two negroes, both in jail, one charged with the same crime of which appellant is charged, and the other charged with larceny, we think the jury should be told that the first question for them to determine in reference to the confession is whether they believe from .the evidence that

defendant has made a confession. In determining that matter, they should consider the testimony of the witnesses who testify to such confessions, their character and interest in the matter, and the reasonableness or unreasonableness of their testimony; and if, after a consideration thereof, they believe that the defendant has made a confession, it is for the jury then to determine the weight to give such confession. In arriving at their conclusion on that point, it is proper for them to consider the person to whom the confession is made, whether it was deliberately and voluntarily made, and all other circumstances surrounding such confession, in order properly to determine what weight and importance to attach to the same; and when two defendants are tried together, the jury should be told that the confession of one defendant is no evidence against the other defendant.

It is further said that the circuit court committed error in permitting the witness Lefew to give to the jury the inferences and conclusions he drew from certain facts in proof, but no objection was made to such testimony before the circuit court, and none can be made here.

We have not set out the evidence in this case further than was necessary to understand the points of law discussed, and express no opinion concerning it. After due consideration, we have concluded that the motion for rehearing should be sustained, and that defendant Redd, as well as Johnson, should be granted a new trial; and it is so ordered.

BATTLE and HUGHES, JJ., concur.

WOOD, J., is of opinion that the court committed error in giving instruction No. 10, and concurs in the judgment for that reason only.

BUNN, C. J., dissents.