PAUL BURKE JR. *v.* STATE

5241                                              413 S. W. 2d 646

Opinion delivered April 17, 1967

*Donald Poe,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. General, for appellee.

J. Fred Jones, Justice. Paul "Sonny" Burke, Jr. was convicted of arson in the Circuit Court of Polk County, and was sentenced to five years in the state penitentiary with three years suspended. He assigned thirty-seven errors in his motion for a new trial which was overruled by the trial court. He has appealed to this court and relies on seven points for reversal.

The facts stated briefly are as follows:

About seven thirty or eight o'clock on December 19, 1963, Buck Cureton's barn and rent house, near Vandervoort in Polk County, were destroyed by fire. The barn was about two hundred yards and the rent house about a quarter of a mile from Cureton's dwelling house. The night was cold and damp, a light mist was falling and freezing as it fell. When Cureton discovered the fires, the barn was ready to collapse. Burning bales of hay were falling from the barn loft, but the fire at the rent house was "a very small fire."

About two years later, on December 23, 1965, appellant was charged with the crime of arson on information filed by the prosecuting attorney. He entered a plea of not guilty at arraignment on January 17, 1966, and was tried to a jury and convicted on July 25, 1966.

At the trial of the case, witnesses testified that the

appellant, in the company of Baram Powell and Harold Gentry, was seen in the vicinity of the Cureton property on the evening before the fire. Harold Gentry testified that he was with the defendant and Baram Powell in the vicinity of the Cureton property, but he didn't remember the date nor did he know the exact location of the Cureton property. A part of Gentry's testimony is as follows:

"Q. Tell us what you recall about what happened there arounl Vandervoort. That is, where did you go?

A. Well, now, I don't know where we went. We drove down the road from Vandervoort and went down maybe a mile or two. I don't know, and we turned around and went back the same way we came from. We turned around and went back for about the same distance, probably the same place, turned around and went back and we left, and the next place that I knowed where we were, that I know for sure where it was other than driving down the road, was at Big Boy's Grocery."

The evidence indicates that the Cureton property was between Vandervoort and Big Boy's Grocery.

Barom Powell testified that he was with the defendant and Gentry in the vicinity of the Cureton property on the day before the fire and that they were drinking; that they drove by the Cureton property three times and then returned to the defendant's home and continued drinking. That the following night he and the defendant, and the defendant's wife, returned to the Cureton property; that he and the defendant got out of the pick-up truck, climbed a fence and walked several yards out into the Cureton property and when in sight of a barn, the appellant announced that he was going to burn the barn and that the witness was going to burn the

other building. The testimony on this point is as follows:

"Q. What car were you in?

A. In my pickup. And we got there Sonny said, 'This will be good enough—'

Q. Got where?

A. To that place.

Q. To what place?

A. This Buck Cureton place.

Q. All right.

A. And me and Sonny got out and got over the fence and got off there a little bit and I said, 'What are we fixing to do?', and he said, 'Well, you're going to burn this place over here, and I'm going to burn this one.' And I said, 'No, I'm not,' and I went back to the pickup.

Q. Was any inducement offered to you to do the work?

A. I believe he said something about twenty-five dollars if I would burn it."

According to this witness he got back into the pickup with the defendant's wife who drove the pickup some distance and turned it around and drove back to near where the defendant had climbed the fence, and that appllant again climbed the fence leaving the Cureton property and got into the pickup.

Then the witness was asked the following question, and gave the following answer:

"Q. When he got into the pickup did you see any fire.?

A. I just saw a glow out to the left out there. It was going pretty good."

At page 93 of the transcript, Jerry Hackworth testified as follows:

"Q. Tell us what Paul Burke said.

A. I don't know how it come about, but he said him and his wife and Baram Powell was supposed to have burned the barn, and that him and his wife backed out and he burned it.

Q. Now who backed out, did he say?

A. Baram and Carolyn.

Q. What else did he say?

A. That he burned it his self."

The defendant testified in his own defense and denied being in the vicinity of the Cureton property in the company of Powell and Gentry on the day prior to the fire. He denied being in the vicinity of the Cureton property on the night of the fire as testified by Powell and denied that he made the statements attributed to him by Hackworth.

We now take up the points relied on by appellant in the order presented.

Appellant contends for his first point, that the state failed to establish *corpus delicti* and that the fire was incendiary. He cites the cases of *Hancock* v. *State*, 204 Ark. 174, 161 S. W. 2d 198, and *Johnson* v. *State*, 198 Ark. 871 S. W. 2d 934, as authority on this point.

In the Hancock case only one barn burned and in the Johnson case a trailer loaded with dry cotton burned. In the Johnson case the exhaust from a tractor pulling the

trailer was directed upward through a four foot pipe and the fire started near the top of the load of cotton.

In the case at bar, *two buildings* several hundred yards apart burned simultaneously on a still "drizzly" night. One of the fires was well under way while the other was still small when discovered. In the total absence of any evidence that the fires could have been of other than incendiary origin, the question was properly submitted to the jury and the jury was justified in the conclusion it reached.

For his second point, appellant contends that the witness, Baram Powell, was an admitted accomplice and his testimony has to be corroborated to support a conviction. He cites the Johnson case, supra, and *Froman and Sanders* v. *State*, 232 Ark. 697, 339 S. W. 2d 601, as authority on this point.

No accomplice was involved in the Johnson case, and in Froman v. State, the prosecuting witness waited in a car while a robbery was committed, she inquired as to whether or not the victim had been injured, the money from the robbery was counted out and divided in her apartment, and although she denied receiving any of the money, she *harbored the defendants* in her apartment.

In holding that the witness was an accomplice as a matter of law in the Froman case, this court applied the rule as to whether or not the accomplice could be convicted as a principal or accessory in the same case, and concluded that she could have been, citing *Havens* v. *State,* 217 Ark. 153, 228 S. W. 2d 1003.

In the case of *Simon* v. *State,* 149 Ark. 609, 233 S. W. 917, this court said:

"The test, generally applied to determine whether or not one is an accomplice, is, could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abbetter upon the evidence? If a judgment of conviction could be sus-

tained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice.

\* \* \*

"The term 'accomplice' can not be used in a loose or popular sense so as to embrace one who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related, but distinct offense. To constitute one an accomplice, he must take some part, perform some act, or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence, acquiescense or silence, in the absence of a duty to act, is not enough, however, reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed can not be said to constitute one an accomplice. Nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime."

This court has defined an accomplice as one who could himself be convicted of the crime charged against the defendant, either as principal or accessory. *Henderson* v. *State,* 174 Ark. 835, 297 S. W. 836. This court has also said that a witness is not an accomplice if he cannot be indicted for the offense, either as a principal or accessory. *McClure* v. *State,* 214 Ark. 159, 215 S. W. 2d 534.

The question of whether or not a witness is an accomplice is a question of mixed law and fact in the trial of a criminal case. *Edmonson* v. *State,* 51 Ark. 115, 10 S. W. 21; *Jackson* v. *State,* 193 Ark. 776, 102 S. W. 2d 546. When that question is submitted to a jury, its findings on the subject are final, unless the testimony shows conclusively that the witness was an accomplice. *Redd,* v. *State,* 63 Ark. 457, 40 S. W. 374.

The question was properly submitted to the jury in the case at bar, and the jury found that Baram Powell

was not an accomplice. There is no testimony showing conclusively that Powell was an accomplice, and his testimony did not have to be corroborated in order to sustain a conviction on his testimony.

Having concluded that the witness, Powell, was not an accomplice in the crime of arson in this case, we do not reach the sufficiency of the corroboraitng evidence under the third and fourth points relied on by appellant.

For his fifth point, appellant contends that the comments of the trial judge on Jerry Hackworth's testimony were prejudicial error.

The court and attorneys were having some difficulty getting Jerry Hackworth, one of the state's witnesses, to talk loud enough to be heard by the jury. Appellant's counsel objected to the testimony on direct examination because the witness had not made himself audible, and requested that the witness be disqualified if he could not talk loud enough to be understood. The court overruled the objections and stated:

> "If he can't talk loud enough for the jury to understand him, they won't get his testimony and it won't be anything but in your favor."

Hackworth was a state witness and was on direct examination at the time the objection to his testimony was made and overruled. We find no objection in the record to the comment made by the trial judge.

Appellant contends as his sixth point that the remarks and actions of trial judge and sheriff in the presence of jury, when the jury reported for further instructions, were prejudicial error.

One of the jurors asked the question:

"Why was the case put off this long?" The record then appears as follows:

"THE COURT: That's a question, of course, that I have no idea about, and I am not in a position to answer it, and I have to 'leave it there . . . Did you mean to inquire of the Court why the case was put off so long in coming to trial after the Information was filed on December 23, 1965?

JUROR: Yes, sir.

THE COURT: The reason for that was that Judge Bobby Steel disqualified himself and asked me to try the case. I am fairly busy myself, and I just didn't get up here any sooner.

JUROR: Thank you.

THE COURT: If it pertained to why it was so long before they filed the case on the 23rd of December, 1965, I don't know anything about that.

SHERIFF HENSLEY: Joe, you tell them.

MR. POE: I want my exceptions saved to the giving of that admonition by the Court.

THE COURT: For the record, Sheriff Hensley said 'Joe can tell you.' The Court heard him and stopped him. Nothing more was said by Mr. Hensley and Mr. Hardegree did not say anything."

It is not clear from the transcript whether the "admonition" complained of by appellant was an admonition to the sheriff, when the court "stopped him," or whether the statement to the juror was being referred to as an "admonition" by appellant's counsel, but in any event we are unable to see how the defendant could have been prejudiced on this point.

For his seventh point, appellant contends that instruction No. 10 was an erroneous declaration of law, and again cites the Froman case, supra.

Instruction No. 10 was an instruction on the sufficiency of corroborating evidence to sustain a conviction on the testimony of an accomplice. In the Froman case, supra, the majority opinion found that the witness *was an accomplice* as a matter of law and that there was no *corroborating evidence*. In the case at bar there was coorroborating evidence which was considered by the jury along with the question of whether witness Powell was an accomplice. We find no prejudicial error in the giving of the instruction.

The judgment of the trial court is affirmed.

Affirmed.

BYRD, J., concurs.

CONLEY BYRD, Justice, concurring. I concur on the basis that there was sufficient testimony to corroborate the testimony of Baram Powell, even if he were an accomplice.