ROGERS *v.* STATE.

Opinion delivered October 28, 1918.

1.   CRIMINAL LAW—ACCOMPLICE.—The fact that a witness was suspected, arrested and bound over to await the action of the grand jury upon a charge of homicide does not show that she was an accomplice in the

commission of that crime, where she was never indicted for the offense and there was nothing in the evidence to warrant an indictment against her.

2. CRIMINAL LAW—ACCOMPLICE—QUESTION FOR JURY.—Whether a witness is an accomplice to an alleged crime is generally a question of fact for the jury; if the facts are in dispute, it is a mixed question of law and fact.

3. SAME—CORROBORATION OF ACCOMPLICE.—The testimony of an ac-complice is sufficiently corroborated if the testimony of defendant and of other witnesses tends to connect him with the commission of the crime.

4. HOMICIDE—PROOF OF CORPUS DELICTI.—In a prosecution for murder of an infant child testimony that defendant was the last person seen with the child alive, that its dead body was found, and that its death was caused by drowning *held* sufficient to establish *corpus delicti.*

5. INDICTMENT AND INFORMATION—DESIGNATION OF PERSON KILLED.— An allegation in an indictment for murder that defendant "did kill and murder a certain infant whose real name is unknown to these grand jurors" is sufficiently sustained by proof that the child was 1½ months old and illegitimate, and that it was killed by its father to conceal his illicit intercourse with its mother.

6. CRIMINAL LAW—FORMER TESTIMONY OF ABSENT WITNESS.—The former testimony of a witness, authenticated by the court stenographer, was properly admitted in a criminal case where subpoenas had been issued for her and returned unserved, reciting that the sheriff had made diligent search for her and that her whereabouts were unknown, and where witnesses acquainted with her stated that she had left, stating that she was going to another State.

7. CRIMINAL LAW—SELECTION OF JURORS—HARMLESS ERROR.—Where several veniremen on their *voir dire* stated that they would not return a verdict on circumstantial evidence and assess the death penalty, but would return a verdict on such evidence and assess life imprisonment, and the prosecuting attorney announced that he would waive the infliction of the death penalty, the selection of such veniremen as jurors was not prejudicial to defendant.

8. HOMICIDE—INSTRUCTION—DEGREE OF OFFENSE—HARMLESS ERROR.— Where the indictment charged murder in the first degree, and the undisputed evidence showed that the accused was guilty of that degree if guilty at all, it was not reversible error for the court to charge the jury that "under this indictment it is competent, if the proof justified, to convict the defendant of murder in the first degree or of murder in the second degree."

Appeal from Pulaski Circuit Court, First Division; *John W. Wade,* Judge; affirmed.

STATEMENT OF FACTS.

Defendant was indicted in proper form for the crime of murder in the first degree in killing a certain infant whose real name, it is alleged, "is unknown to these grand jurors." He was convicted of murder in the second degree and sentenced to ten years' imprisonment in the State penitentiary, and duly prosecutes this appeal. The testimony shows that on Sunday morning in May, 1917, in Pulaski County, Arkansas, the dead body of an infant was found in the back water of Fourche Creek. An inquest was held and an autopsy had on the body of the infant, and physicians testified that its death was caused by asphyxiation and drowning. The body appeared to have been in the water from eighteen to twenty-four hours. The infant was about two or three months old at the time of its death.

Elizabeth Mosley testified that she was twenty-five years old, and had known the defendant four years, and had worked for him about ten months in the year 1916. On March 21, 1917, she gave birth to a baby at the house of Cora Critz in Little Rock. She went to Cora Critz's in January. The defendant was the father of her child. Defendant and witness had been intimate since she began working for him. When the baby was born, defendant wanted witness to give it away, but she would not agree to it. He said some woman in Argenta wanted a little baby. On May 5, 1917, defendant came to the Critz house and took witness and the baby away. He took witness to Mary Williams', and then took the baby off in the buggy. Witness described how the baby was dressed when it left her possession and testified that the dead body of the baby had on the same clothes that it had when defendant took the baby away. Witness never saw the baby after that until she saw it at the cemetery about June 15. It was the understanding that defendant was to take the baby to Keo. She called him up over the telephone and asked him about the baby and he said it was at Keo. She called him up the day before witness was ar-

rested, and he told her the same thing about the baby. After the baby was found, witness was arrested, charged with the murder of her child. Witness never told any one that defendant was the father of the child until after she was arrested. When defendant found the witness was pregnant, he did not want her to stay at home.

Mary Williams testified that she was keeping a rooming house in Little Rock. On May 5, 1917, defendant came to her house at 7:30 p. m. and asked if she had a room to rent a lady. She told him she had. He then went out, came back with a suitcase and other things, and put them on the stairway. In a few minutes after he left, the woman, Elizabeth Mosley, came in. She did not have the baby with her. She was clad all right, only weak physically. Witness had the following conversation with her: "I said, 'You are sick. You look like you run away.' She said, 'I have been sick ever since I gave birth to my baby.' And I said, 'How old is your baby?' and I asked her where her baby was, and she said she gave it to some people to take care of while she looked for a job."

The testimony of Cora Critz, as taken down at a former trial by the court stenographer, was read over the objection of defendant, and to the ruling of the court in admitting her testimony to be read he duly excepted. She testified that Elizabeth Mosley came to her house the first time about February 1, 1917, and lived there until May. The defendant first came to make arrangements with witness for Elizabeth Mosley to stay at witness' house, and said for witness to look to him for the rent. The defendant first came with Elizabeth Mosley. She was in a family way when she came. Defendant would go to her room sometimes when he came to pay the rent. The child was born at witness' house. Defendant went for the doctor. The child was about one month old when defendant and Elizabeth Mosley took it away from witness' house. They left witness' house about dusk in a buggy, and did not tell witness where they were going.

George Lewis, one of the detectives who arrested the defendant, testified that he had a conversation with the defendant as to what defendant did on the night of May the 5th. The defendant said he got the girl and baby near Eighth and Victory streets and took them to Mary Williams, on Ninth and Chester. From there he went out the Arch street pike, crossed six or seven miles out and went across to Sweet Home. He stated that he did not see any one on the way home after he left Mary Williams' house. He stated that the last time he saw the Mosley girl and baby was when he put them out at Mary Williams'.

The defendant, in his own behalf, testified that he knew nothing about the death of the baby. He was intimate with Elizabeth Mosley from about September 1, 1916. He found out she was in a family way some time about the first of October. Witness then took her to Cora Critz's, and from there to Mary Williams'. Witness drove down on the south side of the street, got out of the buggy, took Elizabeth Mosley's grip, etc., carried them across the street and set them on the curb; did not want to be embarrassed by taking them in and then being denied. He asked Mary Williams if she would take care of her, and she said she would. He took Elizabeth Mosley by the arm and helped her out of the buggy. She had the baby in the other arm. Witness then got in the buggy and drove off. Witness then described the route he took that night after leaving Mary Williams' and the places where he stopped and mentioned the names of persons whom he met. Witness was a preacher and an organizer of societies. He stated that after leaving the Mosley woman at Mary Williams', the reason he went out on the Arch street pike was that previous to that time he had made an arrangement with Jackson Jones to get up a lodge out there on that night. He went to his house that night but that Jones was not at home. The last time he saw Elizabeth Mosley before he was arrested was on May 5, when he put her and the baby out at Mary Williams'. Elizabeth was arrested first. Defendant testi-

fied that some twenty-two years ago he had been sentenced to the penitentiary, but was pardoned and never served a day.

There was testimony tending to corroborate the testimony of the defendant as to the places where he went and the persons whom he saw on the Saturday night after leaving the house of Mary Williams. There was testimony, also, tending to show that defendant had a good reputation. Defendant offered to show by the records that Elizabeth Mosley was tried in the examining court and bound over to the grand jury on a bond of $5,000 on a charge of murdering her child, which bond she failed to make and spent several weeks in jail. The court refused to allow this testimony, and the defendant duly excepted. Other facts stated in the opinion.

*Fred A. Isgrig* and *S. A. Jones,* for appellant; *Gardner K. Oliphint,* on the brief.

1. The verdict is unsupported by the evidence. Elizabeth Mosley was an accomplice and her testimony is not corroborated. Kirby's Digest, § 2384; 63 Ark. 457; 130 *Id.* 353; 161 Cal. 433; 36 Ark. 126; 50 *Id.* 544; 75 *Id.* 111; 114 *Id.* 300; 119 Pac. 901; 39 L. R. A. (N. S.) 704-5; 75 Ark. 542; 64 *Id.* 247.

2. The evidence is all circumstantial and is not consistent with the guilt of defendant. It does not convict beyond reasonable doubt. 52 Ark. 226; 68 *Id.* 529; 83 *Id.* 192; 85 *Id.* 360; 117 *Id.* 296; 118 *Id.* 349. Mere suspicion or conjecture is not sufficient, the testimony must be substantial. 97 Ark. 156 and cases *ante.*

3. A party can not corroborate himself by proving what he said or did at another time. 92 Ark. 472; 116 *Id.* 482. The testimony of Mary Williams does not corroborate Elizabeth Mosley's and it was incompetent. 88 Ark. 451; 109 *Id.* 130; 10 R. C. L. 959, 960, § § 133-4; 86 Ark. 23; 204 Fed. 909-12-13; 227 *Id.* 855; 154 *Id.* 577; 120 Ark. 148.

4. As to the insufficiency of the evidence to support a verdict, see also 1 McLain, Cr. Law, § 409; 43 Mont.

31; 114 Pac. 112; Ann. Cas. 1912 C, 235; 50 N. W. 59; 109 Iowa, 624; 70 Ark. 385; 57 *Id.* 492; 10 *Id.* 492; 34 *Id.* 639. The testimony of defendant and his witnesses is uncontradicted and the jury had no right to disregard it. 101 Ark. 532; 96 *Id.* 504; 80 *Id.* 396; 67 *Id.* 514; 53 *Id.* 96.

5. The *corpus delicti* was not established. 34 Ark. 720, 743-4-6-7; 1 Wharton, Cr. Law, § 346 *et seq.;* 131 S. W. 553.

6. The State failed to prove the allegation that the real name of the infant was unknown to the grand jury. It was material. 38 Ark. 637; 13 *Id.* 712; 16 *Id.* 499, 502-3; 34 *Id.* 720; 30 *Id.* 162; 80 *Id.* 94; 18 Enc. Pl. & Pr. 1222; 58 Ark. 35; 33 S. W. 779, 802; 38 *Id.* 331; 30 Ind. 115; 14 R. C. L. 174, 183; Kirby's Dig., § 2233; 14 Cal. 581; 1 Chitty, Cr. Law, § 213; 19 Ark. 613; 161 Pac. 331. See also 32 Ark. 722; 16 *Id.* 568; *Ib.* 610; 29 *Id.* 34; 97 Atl. 780; Kirby's Dig., § 2233; 124 U. S. 486; 157 *Id.* 187; 241 Fed. 841.

7. It was error to permit the prosecuting attorney to read the testimony of Cora Critz taken at a former trial. No proper foundation was laid. 95 Ark. 172, 176.

8. It was error to permit the prosecuting attorney to elect to waive the death penalty. There was also error in instruction on murder in the first degree. 202 S. W. 49; Kirby's Dig., § 2363; 88 Ark. 20; 14 R. C. L. 782, 784-5. See also 85 Ark. 514; 54 *Id.* 336; 82 *Id.* 127; 77 *Id.* 567; 76 *Id.* 599.

9. There was error in the rulings and statements made during the reception of the testimony. 107 Ark. 472; 123 *Id.* 146; 51 *Id.* 147; 53 *Id.* 387; 56 *Id.* 345; 111 *Id.* 134; 43 *Id.* 104; 69 *Id.* 648.

10. There is error in the instructions as to murder in the second degree. 1 Wharton, Cr. Law, § 417; Kirby's Dig., § 1766; 109 Ark. 516; 57 *Id.* 461; 37 *Id.* 433; 117 *Id.* 82; 119 *Id.* 57; 102 *Id.* 180; 107 *Id.* 472. See also 30 *Id.* 328; 36 *Id.* 284; 52 *Id.* 345; 37 *Id.* 433; 57 *Id.* 461; 71 *Id.* 86; 74 *Id.* 262, 444; 88 *Id.* 447; 102 *Id.* 180; 109 *Id.* 516; 117 *Id.* 82; 119 *Id.* 57. See also 36 *Id.* 284, 293; 71 *Id.* 86;

156 U. S. 51; 165 *Id.* 373; 162 *Id.* 313, 466; 170 *Id.* 481; 163 *Id.* 353; 168 Fed. 536; 39 L. R. A. (N. S.) 611; 201 S. W. 322, and many others.

11.   The court erred in charging the jury that the killing being proved, the burden of proving circumstances of mitigation or justification was on the accused, etc. Kirby's Dig., § 1765; 120 Ark. 193; 128 *Id.* 565; 54 *Id.* 336; 88 *Id.* 20.

12.   The punishment is excessive.   73 Ark. 281; 76 *Id.* 518.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.   The evidence is sufficient.   The question of an accomplice was not raised but is a question of fact, or at least a mixed question of law and fact for the jury under proper instructions.   51 Ark. 115; *Ib.* 189; 1 R. C. L. 158 § 3.   But Elizabeth Mosley was not an accomplice.   1 R. C. L. 157, § 3.   But if she was her testimony was corroborated.

2.   The *corpus delicti* was proved.   34 Ark. 744.

3.   It was not necessary to prove that the name of the infant was unknown to the grand jury.   156 U. S. 432; 16 Neb. 670; 61 Pac. 828; 96 Ark. 477.

4.   Cora Critz's testimony was admissible.   95 Ark. 172; 90 *Id.* 514; 29 *Id.* 17; 58 *Id.* 352; 33 *Id.* 539; 60 *Id.* 400.

5.   No error in permitting the State to waive the death penalty, nor in instructing as to murder in the first degree.   52 Ark. 180; 71 *Id.* 86; 5 *Id.* 408; 22 *Id.* 216; 45 *Id.* 464; 51 *Id.* 167; 68 *Id.* 310; 60 *Id.* 76; 73 *Id.* 280.

6.   No error in the rulings or remarks of the court in the admission of evidence.   Kirby's Dig., § 3137; 42 Ark. 542; 83 Kan. 703; 10 R. C. L. 959, § 133.

7.   No error in instructions on murder in the second degree.   71 Ark. 86; 119 *Id.* 57; 43 *Id.* 289; 1 Wharton, Cr. Law (10 ed.), § 447; Kirby's Dig., § 1766-7; 55 Ark. 556; 11 *Id.* 455; 35 *Id.* 585.

8. There was no error in instructing in the language of Kirby's Dig., § 1765; 99 Ark. 462; 100 *Id.* 180; 113 *Id.* 598.

9. The punishment not excessive.

WOOD, J., (after stating the facts). 1. The appellant contends that the evidence is insufficient to sustain the verdict, and that in passing on this issue the court must consider the testimony of witness, Elizabeth Mosley, in the light of an accomplice. The fact that Elizabeth Mosley was suspected, arrested and bound over to await the action of the grand jury on such charge does not tend to show that she was an accomplice. Hence the court did not err in excluding testimony to that effect. It is stated by the appellant that Elizabeth Mosley was never indicted for the offense, and there was nothing in the evidence to warrant an indictment against her. See 1 R. C. L., p. 157, § 3.

Whether a witness is an accomplice to an alleged crime is, generally speaking, a question of fact for the jury. At least, if the facts are in dispute, it is a mixed question of law and fact. *Edmonson* v. *State*, 51 Ark. 115; *Green* v. *State*, 51 Ark. 189-198; *Redd* v. *State*, 63 Ark. 457; 1 R. C. L., pp. 157-158, § 3. See *Murphy* v. *State*, 130 Ark. 355.

The appellant did not request instructions on this issue in the trial court. If he had done so, and the issue had been correctly submitted, the jury might have found that witness, Elizabeth Mosley, was not an accomplice. But, even if we should hold that Elizabeth Mosley was an accomplice, her testimony is sufficiently corroborated by the testimony of the appellant himself, and other witnesses, tending to connect the appellant with the commission of the crime. Appellant contends that, even if witness, Elizabeth Mosley, was not an accomplice, her testimony is not sufficient to sustain the verdict. The testimony is fully set forth in the statement, and it could serve no useful purpose to discuss it in detail. It is amply sufficient to sustain the verdict.

Counsel for the appellant contend that there was no proof of the *corpus delicti,* but in this counsel are mistaken. The dead body of the infant was found, and witnesses, medical experts, testified that its death was caused by asphyxiation or drowning. The testimony showed that it was the infant alleged to have been murdered by the appellant, and the testimony tended to prove that appellant, under pretense of taking the baby to be cared for by some of his friends living at Keo, drove away with the baby in his buggy at about 7 o'clock Saturday evening, on May 5, 1917, and that he was the last one seen with the baby alive. The body was identified, both from its dress and appearance, by Elizabeth Mosley as being her child. She stated that the baby was taken away by the appellant on Saturday evening. On the following day it was found dead in Fourche Creek. The above evidence is sufficient to establish the *corpus delicti.* *Edmonds* v. *State,* 34 Ark. 744.

2. The indictment alleged that the appellant "did kill and murder a certain infant whose real name is unknown to these grand jurors." The appellant alleged as one of his grounds for new trial, that no proof was adduced to sustain the above allegation. The Attorney General concedes that there was no direct or positive testimony to sustain the allegation. But there was testimony which tended to show that the infant was murdered when it was only about 1½ months old; that it was an illegitimate negro babe; that its mother was a vagrant and that its father was a preacher and society organizer among his race with no settled abode. The testimony tended to show that his endeavor was to send away and get rid of the child, and thus to conceal the evidence of his illicit commerce, rather than to give the baby "a local habitation and a name."

The jury might have found that the infant was but a waif, the issue of illegal cohabitation, and not likely, under the unpropitious circumstances of its birth and fleeting existence, to have been given any name. Hence there was evidence from which the trial jury might have rea-

sonably concluded that the name of the infant was unknown to the grand jury, for the reason that it had no name. The facts bring the case within the doctrine announced by Chief Justice Watkins in *Cameron* v. *State,* 13 Ark. 712-719, that: "In order to sustain a count for an offense against one whose name the indictment alleges to be unknown to the grand jury, there must be evidence showing that the name could not reasonably be supposed to have been known to the grand jury. The only safe rule is that the allegation in question is a material one traversed by the plea of not guilty, and must be sustained, and may be rebutted by proof. The inquiry is not whether the grand jury could, by any possibility have ascertained the name of the person which they aver to be unknown, but whether the traverse jury can find from the evidence that it was known to the grand jury, or can reasonably suppose that they could have ascertained it by due inquiry on the part of the prosecution. * * * But there was evidence on both sides, from which the jury might well have found the fact to be either way, i. e., that the name was unknown, or that the grand jury might have known it, by reasonable diligence."

Where such is the case, and the trial court refuses to grant a new trial, and there is evidence, on the issue of guilt or innocence, to sustain the verdict, this court will not set it aside. The traverse jury was warranted in finding from the testimony that the investigation before the grand jury must have disclosed that the name of the mother of the child was Mosley, and that the name of the father was Rogers; that the child was illegitimate and without a name, at least, that its real name was unknown to the grand jury, and hence it was so alleged in the indictment. The testimony on this issue was sufficient to meet the requirements of the law that, where it is alleged that the name of the person injured was unknown, it devolves upon the State to prove such allegation. *Cameron* v. *State, supra; Reed* v. *State,* 16 Ark. 499; *State* v. *Seely,* 30 Ark.

162-163; *Edmonds* v. *State,* 34 Ark. 732; *Floyd* v. *State,* 80 Ark. 94-97.

3. The court did not err in permitting the transcript of the testimony of Cora Critz at a former trial of the cause to be read in evidence. The official court stenographer duly authenticated the testimony as that of Cora Critz, taken down in short hand at the former trial after the witness was duly sworn and when appellant and his counsel were present and had an opportunity to cross-examine the witness. He stated that the testimony so taken was correctly transcribed. A witness, who was personally well acquainted with Cora Critz, testified that, after the death of her son, she stated that she was going to Texas. She left and had not returned, so far as the witness knew. Two subpoenas for Cora Critz had been issued and were returned *non est.* The returns recited that the sheriff had made diligent search for the witness and had been unable to find her in Pulaski County, and that her whereabouts were unknown. The proper foundation was laid for the introduction of the secondary evidence and the ruling of the court in admitting it was correct. *Hurley* v. *State,* 29 Ark. 17; *Kelley* v. *State,* 133 Ark. 261; *Shackleford* v. *State,* 33 Ark. 539; *McNamara* v. *State,* 60 Ark. 400; *Vaughan* v. *State,* 58 Ark. 352; *Wimberly* v. *State,* 90 Ark. 514; *Poe* v. *State,* 95 Ark. 172.

4. Several veniremen, upon their *voir dire,* stated that they would not return a verdict on circumstantial evidence and assess the death penalty, but would return a verdict on such evidence and assess life imprisonment. The veniremen, after so stating, were at first excused but were afterwards recalled upon the prosecuting attorney announcing that he would waive the infliction of the death penalty. Thereupon, the court held such veniremen to be qualified jurors, to which ruling the appellant excepted and exhausted a peremptory challenge on these veniremen.

The Legislature of 1915 passed an act authorizing the jury, in the event they found a defendant guilty of a capital offense, to assess the punishment at either death,

or life imprisonment. See *Bell* v. *State*, 120 Ark. 530; *Kelley* v. *State*, 133 Ark. 261, 202 S. W. 49. The irregularity in this manner of selecting a jury, and the error of the court in permitting it, could not, from any viewpoint, be prejudicial to the rights of appellant. On the contrary, its effect was to insure appellant against the death penalty under the indictment when, but for such waiver, the jury would have been authorized to inflict upon him such punishment. The waiver by the prosecuting attorney, and the selection of jurors to try appellant who did not believe in assessing the death penalty under an indictment which authorized such penalty to be assessed, but inured to the benefit of the appellant. For although the undisputed evidence proved that, if appellant was guilty at all, he was guilty of murder in the first degree, nevertheless, the jury under the State's waiver, even though they found the appellant guilty, could not return a verdict that would call for the imposition of the death penalty. The ruling of the court was tantamount to assuring appellant a lighter punishment than otherwise might have been imposed upon him under the indictment and the undisputed evidence as to the degree of the homicide. Of such ruling he can not be heard to complain. *Glenn* v. *State*, 71 Ark. 86; *Bruce* v. *State*, 68 Ark. 310, and other cases cited in State's brief.

5. Likewise, there was no prejudicial, and therefore no reversible error in the court instructing the jury that "under this indictment, it is competent, if the proof justified, to convict the defendant of murder in the first degree, or of murder in the second degree." The proof warranted the jury in returning a verdict only for murder in the first degree, and under the State's waiver, they were authorized to fix his punishment at life imprisonment . The verdict shows that the jury believed that the appellant was guilty, and appellant is not in an attitude to complain because the jury extended to him clemency and found him guilty of a lower degree than the undisputed evidence warranted, and imposed a lighter penalty

than should have been inflicted upon the return of a proper verdict.

Where the indictment charges murder in the first degree, and the undisputed evidence shows that the accused, if guilty at all is guilty of murder in the first degree, then it is not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lower degrees of homicide. *King* v. *State,* 117 Ark. 82-88; *Dewein* v. *State,* 114 Ark. 472-484-485; *Thompson* v. *State,* 88 Ark. 448; *Ringer* v. *State,* 74 Ark. 262; *Allison* v. *State,* 74 Ark. 444-453; *Jones* v. *State,* 52 Ark. 345; *Fagg* v. *State,* 50 Ark. 506; *Allen* v. *State,* 37 Ark. 435; *Curtis* v. *State,* 36 Ark. 284. But, on the other hand, it is not prejudicial error for the court to give an instruction on the lower degree in such case, because the error is one that results to the defendant's advantage. While it is error to give an abstract instruction, yet, under the settled rule of this court, if it affirmatively appears that the rights of the accused are not prejudiced thereby, the judgment will not be reversed for such error. *Autrey* v. *State,* 113 Ark. 347; 14 R. C. L., p. 783, Sec. 49.

Such is the case here. The verdict shows that the jury believed the defendant guilty, and they so found. Had the instructions on the lower grades of homicide not been given, the jury, finding the defendant guilty, must have returned their verdict for murder in the first degree. Such verdict, under the State's waiver, would have called for life imprisonment. The instructions on the lower grades of homicide, therefore, were in the appellant's favor, and he can not complain of the error of the court in giving them. The exact point is ruled by the cases of *Vasser* v. *State,* 75 Ark. 373-381; *Burnett* v. *State,* 80 Ark. 225. See also *Paxton* v. *State,* 108 Ark. 316-320; *Glenn* v. *State,* 71 Ark. 86; *McGough* v. *State,* 119 Ark. 57.

6. Errors are predicated upon certain rulings of the court in remarks made while the testimony was being introduced. We have carefully examined these, and find no reversible error in the court's rulings, and do not deem

these assignments of error of sufficient importance to discuss.

7. Since we have concluded that the evidence was sufficient to sustain a verdict for murder in the first degree, and the defendant if guilty at all, was guilty of only that degree of murder, it follows that the punishment assessed by the jury was not excessive. There are no reversible errors in the record, and the judgment is therefore affirmed.