[Crim. No. 1398.   Third Appellate District.—February 1, 1935.]

THE PEOPLE, Respondent, v. HAZEL TERMAN, Appellant.

Melvin Belli and Donald Smith for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Appellant herein, together with Edwin Williams and another, were by an indictment charged with the murder of David Terman, the husband of appellant, on the eleventh day of April, 1934, and in a second count the defendants were charged with the crime of conspiracy to murder, and thereafter in pursuance of said conspiracy did murder David Terman.

At the first trial Williams was found guilty of murder, but as to the guilt or innocence of the others the jury could not agree. Upon the present trial appellant was found guilty of murder of the second degree and her co-defendant was acquitted.

The evidence disclosed that Williams shot Terman, and appellant was charged on the theory that she aided and abetted him in the commission of the crime.

Appellant, appealing, contends the evidence is insufficient to support the verdict, and that the district attorney was guilty of prejudicial misconduct. Section 31 of the Penal Code provides that "all persons concerned in the commission of a crime, whether it be a felony or a misdemeanor and whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission . . . , are principals in any crime so committed."

Section 971 of the Penal Code provides: " . . . All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried and punished as principals."

In 7 California Jurisprudence, page 888, it is said: " . . . The legal definition of 'aid' is not different from its meaning in common parlance. It means to assist, to supplement the efforts of another. 'Abet' is a French word combined of two words 'a' and 'beter',—to bait or excite an animal. The word 'aid' does not imply guilty knowledge or felonious intent, whereas the word 'abet' includes knowledge of the

wrongful purpose of the perpetrator and counsel and encouragement in the crime.''

██ To authorize the conviction of one as an aider and abettor of a crime it must be shown not only that he aided and assisted therein, but also that he abetted the act, that is to say that he criminally or with guilty knowledge and intent, aided the actual perpetrator in the commission of the act.

██ The record unfolds a sordid story of the family life of appellant, her deceased husband and their three daughters, who range from eleven to sixteen years of age. It reveals a dissolute idle husband, a wife forced into acts of prostitution in the house and the three daughters seeing and understanding the entire evil surroundings.

Williams, the actual killer, seems to have been unsound mentally, for although found by the jury to have caused the death of Terman, was later held to have been not guilty by reason of insanity. He was a neighbor of the Termans and earlier in their history had been a frequent visitor at their home and was apparently sympathetic toward Mrs. Terman and the daughters. He frequently supplied them with groceries and vegetables and also gave Mrs. Terman considerable sums of money at different times. Unfriendly relations arose between Terman and Williams and each threatened to kill the other. Williams was forbidden to visit the Terman household, but did so clandestinely and continued to supply Mrs. Terman and her daughters with food and occasionally with money. He often came to the house of the Termans late at night and stealthily looked through the windows to see how the family were getting along. Apparently the things he saw were not to his liking and he told Mrs. Terman, whom he met for a few minutes every Saturday night, outdoors and under cover of darkness, that he was going to kill Terman. The sixteen year old daughter testified her mother told her at different times that Williams was threatening to kill her father and not to be surprised if she came home some time and found him dead, and on the day before the actual killing appellant told her Williams was going to do away with the old man and that it might be Wednesday.

Upon Wednesday, April 11th, appellant, her three daughters, with two men, one a young man who was apparently

a friend of the oldest daughter, and the other man who was jointly charged with appellant of the murder, but acquitted thereof, all went to Healdsburg,—the two younger daughters to a picture show, the other four to an amusement park or dance pavilion. They invited Terman to accompany them but he refused. When they returned home they discovered Terman had been shot and dragged into the orchard, where they found his dead body.

After the arrest of Mrs. Terman she made a statement to the district attorney in which she narrated in considerable detail all that preceded the shooting, much of which was also corroborated by witnesses during the trial. She told of the clandestine meetings between Williams and herself, and contributions made by him to the family. About three or four weeks before the death of Terman, Mrs. Terman told Williams that her husband wanted her to return to her former life of prostitution to support the family. This seemed to greatly disturb Williams and from then on he began to talk of killing Terman. On the Saturday immediately prior to the killing, Williams asked Mrs. Terman if Terman had succeeded in his plans of compelling her by acts of prostitution to add to the family finances, and she told him no, but she did not know how much longer she could hold out, as Terman was threatening to bring someone to the house by the end of the week. Williams then said, "I am going to kill him. The first night I come down and the dog is not home, and he is there, I will kill him,—I will come down and get him, and if the dog stands in my way, I'll kill him too." On Monday evening Williams again met Mrs. Terman out in the orchard and again told her he was going to kill Terman, and said, "I have definitely made up my mind to do the act this week," to which Mrs. Terman replied, "We will be gone Saturday night, and maybe one night between that," and Williams said also, "If I should come down with the intention to do that deed and you are not home and the dog is in the yard, I shall kill him." The dog in question was a young police dog about four months old, belonging to the girls, and as the mother said, "The children thought more of the dog than they did of him" (Terman).

A trip to Healdsburg had been arranged for Wednesday evening. On that afternoon the dog was given into the

custody of a man named Pike, who had agreed to keep the dog for the evening. The mother and daughters left the house, leaving Terman there, and did not return until about 11:30 o'clock, when they found Terman dead, as related above.

From these facts can it be said appellant aided and abetted in the murder of Terman? That appellant had knowledge of the criminal intent of Williams, is clearly shown from the evidence. In fact, as we understand the argument of counsel, they conclude the prior knowledge on the part of appellant but claim she did nothing to aid, encourage or abet Williams in the killing. We gather from the evidence appellant was not adverse to the loss of her husband. She had in fact promised a man named Pike that if she could get a divorce from Terman she would marry him. Her home surroundings were not congenial and she had wanted for some time to return to her former home in Idaho.

It is quite obvious that appellant meant to encourage Williams in his plans when he said he would kill Terman some night, by her telling him they would not be home with the deceased on Saturday night and maybe one night before that. With that in mind, and knowing that Williams did not want the dog there and would kill the dog if it were there, they all left the house and arranged to have the dog away, and remained away until a late hour. While at the dance hall that evening, appellant talked with her companion about the contemplated killing and remarked that if Williams had carried out his threat it was probably all over by that time.

From a study of the entire record we must agree with the prosecution that appellant, by her words and acts, aided and abetted and encouraged Williams to murder her husband, having full knowledge of his criminal purpose and desiring to see him accomplish his object.

The evidence is sufficient to sustain the verdict of murder in the second degree on the theory that appellant aided and abetted in the commission of the crime.

It is the contention of appellant also that the district attorney was guilty of prejudicial misconduct, but we find nothing in the citation thereof to justify that charge.

During the redirect examination of one of the Terman girls the district attorney asked her if her mother had not told her that she would collect some insurance money after the death of Terman, and take the witness, together with her sisters, back to Idaho, to which the witness answered in the negative. No objection was made to the question but a motion to strike on the ground it was not proper redirect examination was denied. The asking of the question was also cited as prejudicial misconduct, and the district attorney stated he would introduce further evidence upon that subject. Later he asked another daughter as to a conversation she had with the matron at the detention home and the witness said she told the matron her mother told her they were going to Idaho with money they were going to get from the government. She did not remember, however, whether or not she heard her mother say anything about insurance money. Appellant herself said she referred to money which might be received from the soldier's bonus, to which appellant was entitled.

We see no indication of bad faith on the part of the district attorney, nor does it appear that any prejudicial error was committed.

A careful reading of the entire record does not disclose reversible error in the record or insufficiency of the evidence to justify the finding of the jury, and the judgment and order appealed from therefore should be affirmed, and it is so ordered.

Plummer, J., and Thompson, J., concurred.