[Crim. No. 3603.    Second Dist., Div. Two.    Nov. 6, 1942.]

THE PEOPLE, Respondent, v. JOSEF ROBERT STEIN, Appellant.

Alfred F. MacDonald and Carl B. Sturzenacker for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent

McCOMB, J.—From judgments finding him guilty on each of five counts of violating section 266g of the Penal Code (a husband permitting his wife to remain in a house of prostitution) after trial before the court without a jury defendant appeals.  There are also appeals from orders denying his motions for a new trial.

Defendant concedes that:

(1) Geraldine Stein was his wife on the dates mentioned in the information, to wit, on or about February 15, August 16, and September 21, 1940, March 5, 1941, and January 14, 1942;

(2) His wife practiced prostitution on or about the dates and at the places mentioned in the information; and

(3) His wife entered such places for the purpose of carrying on the business of prostitution.

The evidence further discloses that defendant met his wife in December, 1939, and that she was then known as Geraldine Rice or Terry Nailes. In January, 1940, they were married in Reno, Nevada. They then went to Fresno, California, where defendant remained with his wife for about a week. He then left her there and came to Los Angeles where he was arrested on a report that Geraldine Rice was a missing person. He was permitted to return to Fresno and bring her to Los Angeles, where they were questioned by the Federal Bureau of Investigation and she admitted that prior to her marriage to defendant she had practiced prostitution.

Being released by the authorities, defendant and his wife remained in Los Angeles. Patricia Evans, who conducted a house of prostitution in the 1200 block on North Cienega Street in Los Angeles, testified that in the latter part of 1939 or the early part of 1940 a man named Dago Frank came to her house accompanied by defendant and his wife and introduced the latter as Terry Nash; that a discussion then ensued between the four of them relative to Terry Nash's entering her house as a prostitute; that during the conversation either Dago Frank or defendant asked her how much a girl could make, to which she replied, "It is all up to the girl; some girls could make more than others." She further testified that Terry Nash (defendant's wife) worked as a prostitute for her during the months of February, March, and April, 1940; that while so employed the said Terry Nash averaged from $20 to $25 a day for herself, which was one-half of her earnings, the balance being paid to the witness; and that every night defendant came to her house of assignation, which closed at 2:00 or 2:30 in the morning, and took his wife home. On some occasions he would have to wait until his wife had finished entertaining a man who was in the house, to which defendant made no objection. The witness

testified that she did not know defendant or his wife prior to the time that she was introduced to them by Dago Frank, on which occasion defendant was introduced as Miss Terry Nash. There is no evidence in the record that the witness ever knew that defendant and Terry Nash were married.

Mrs. Frances Rosegarten, who conducted a bawdy house at 621 North Lillian Way, Los Angeles, testified that defendant and Terry Nash (defendant's wife) came to see her and discussed the matter of defendant's wife going to work for her and that one or the other inquired whether she could make $40 a day, $20 for herself and $20 for the house. Following the conversation defendant's wife remained in the house and practiced prostitution. On one occasion defendant came to the house and inquired of the witness where Terry was, and, when the witness stated to defendant that Terry was out, the defendant said that he would take the money due Terry. Whereupon the witness stated that she gave him $20 or $25 in cash for delivery to his wife. This was in the month of August, 1940. Later the witness moved her house of prostitution to 731 North St. Andrews Street, Los Angeles, where she conducted the business of prostitution and where defendant's wife worked for her. In September, 1940, this witness also testified, that while she was operating the last mentioned house defendant came to her place of business and visited with his wife. She also testified that she subsequently opened a house of ill repute at 1150 North Curson Street, where defendant's wife worked as a prostitute, and during the time that she was working there defendant visited his wife once or twice a week. The witness testified that she did not know that Terry Nash was defendant's wife.

The evidence further discloses that on July 26, 1941, defendant's wife under the name of Mrs. Dave Montrose rented a house at 8546 West Knoll Drive; that defendant appeared at the West Hollywood branch of the Southern California Edison Company and under the name of Dave Montrose contracted for electric service for said premises; that defendant's wife lived at the house with a maid until January 14, 1942, when a deputy sheriff, pursuant to an appointment with defendant's wife, went to the house and after waiting a short time was ushered into a bedroom where in response to a question to her as to the amount of her charge, she replied $10, whereupon she undressed and he took off his shoes and

necktie. Whereupon the officer disclosed his identity and placed her under arrest. At about 12:00 o'clock defendant came to the front door and was admitted to the house, whereupon he looked around and said, "Well, I guess this is the end of this house." Defendant had in his possession a key which fitted the front door and there was found on the premises a bathrobe that belonged to defendant. Defendant further stated to the officers that he didn't mind going to the penitentiary on a charge of robbery but he didn't want to be returned on a morals charge, for on such a charge he would be looked down upon by the inmates of the penitentiary.

Defendant urges reversal of the judgment on this proposition:

*There is no substantial evidence to sustain the finding that defendant permitted his wife to remain in a house of prostitution, in the absence of the inferences which may be drawn from the testimony of the witnesses Evans and Rosegarten, which testimony defendant asserts must be disregarded because said witnesses were accomplices within the meaning of section 1111 of the Penal Code.*

This proposition is untenable and is governed by the following rule of law: Aside from the person who commits a criminal offense, no other party is guilty as a principal unless he aids and abets in the commission of the offense. (§§ 31 and 971, Pen. Code; *People* v. *Dole,* 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50].)

The word "abet" implies knowledge of the wrongful purpose of the perpetrator of the crime. (*People* v. *Dole, supra.*)

In the present case there is no evidence that either of the witnesses knew that defendant and Terry Nash were husband and wife. Therefore it is obvious that neither of the witnesses could have aided and abetted in the commission of the crimes of which defendant was convicted, to wit, a husband permitting his wife to remain in a house of prostitution contrary to the provisions of section 266g of the Penal Code.

Therefore, viewing the testimony of these witnesses in the light most favorable to the People (respondent) it is evident that the trial court properly found that the defendant knew that his wife was engaged in prostitution and permitted her in violation of section 266g of the Penal Code to remain in a house where this business was being conducted and also permitted and encouraged her to practice prostitution.

For the foregoing reasons the judgments and orders are and each is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.