LEON SATTERFIELD v. STATE OF ARKANSAS

5375                                          432 S.W. 2d 472

Opinion Delivered October 14, 1968

*Ben McCourtney & Associates* by *David N. Laser* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

LYLE BROWN, Justice.    Leon Satterfield appeals from a conviction for arson involving the alleged setting fire to a barn.    The issues raised which are determinative of the appeal concern (1) the refusal of the court to submit to the jury the question of whether three of the State's witnesses were accomplices, and (2) the injection into the trial of evidence of other alleged acts of arson.

On an October night, 1967, a barn filled with baled, dry hay, and located on the outskirts of Salem, Fulton County, was destroyed by fire.    The principal witnesses for the State were three teenagers, two boys and a girl, who testified in substance that they were in Satterfield's car and accompanied him to the scene; that the defendant mentioned his intentions before arriving; that upon arrival, Satterfield stopped the car some twenty-five

yards from the barn and proceeded to the nearest barn corner; that he returned to the car in a matter of minutes and drove away; that after driving a short distance they saw the fire develop, coming from the corner of the barn where Satterfield had stopped. Other pertinent facts will be related as appellant's two principal points are discussed.

Point I: *The Trial Court · Erred in Refusing to Give Requested Instructions Which Would Permit the Jury to Determine Whether Satterfield's Three Companions Were Accomplices.* We hold this point to be meritorious. The three witnesses and appellant were well acquainted, of approximately the same age, and their social activities often brought them together. There was testimony that Satterfield and at least one of his companions had been drinking intoxicants that night. The girl had been with appellant continuously for more than two hours preceding the fire; the two boys joined the couple in Satterfield's car at a dairy diner; the four rode around town and then headed out on the county road toward the barn; there was testimony that Satterfield pointed out the barn and that one of the companions remarked that it was filled with hay; the companions sat by while Satterfield purportedly went to set the fire; a return trip was then made to the dairy diner; after eating a sandwich and fixing a flat tire, Satterfield and the two boys returned to the scene of the fire and watched the burning for some ten or fifteen minutes.

There is another circumstance which might well have been significant to the jury. So far as the record discloses, none of the companions revealed their knowledge of the crime, at least until they were faced with evidence of that knowledge. The passive failure to disclose commission of a crime does not make one an accessory after the fact; however, the failure to so disclose could shed light on his relation with the wrongdoer at the time the crime was committed.

One who stands by and aids, abets, or assists in the perpetration of a crime is an accessory before the fact. Ark. Stat. Ann. § 41-119 (Repl. 1964). When the Legislature used the phrase "one who stands by and . . . abets" it is assumed it was not playing with words; to the contrary, an abettor is well recognized in the law. If one stands by and aids, he gives assistance and support to supplement the efforts of the principal; that action does not really describe an abettor, although "aid" and "abet" are often used as synonymous. If one stands by and encourages, baits, or incites the commission of a crime he is an abettor. *State* v. *Western Union Tel. Co.,* 80 A. 2d 342 (1951); see Black's Law Dictionary 4th Edition. Also, see Ark. Stat. Ann. § 41-504 (Repl. 1964), which is a strongly worded statute covering accomplices to arson.

In connection with Point I, we have given consideration to two well-established rules of this court:

First: "Whether a witness is an accomplice to an alleged crime is, generally speaking, a question of fact for the jury. At least, if the facts are in dispute, it is a mixed question of law and fact." *Rogers* v. *State,* 136 Ark. 161, 206 S.W. 152 (1918); and,

Second: "The test, generally applied to determine whether or not one is an accomplice, is, could the person so charged be convicted as principal, or an accessory before the fact, or an aider and abetter upon the evidence?" *Simon* v. *State,* 149 Ark. 609, 233 S.W. 917 (1921).

We hold that the status of Satterfield's companions was a question of fact for the jury, and that there were sufficient facts produced which meet the test in *Simon,* particularly in light of the inclusion of abettors as accomplices. See *Boyd* v. *State,* 215 Ark. 156, 219 S.W. 2d 623 (1949).

Point II. *The Court Erred in Allowing the Prosecuting Attorney to Make Any Remarks in His Opening Statement to the Jury Concerning Alleged Prior Similar Offenses, and in Refusing to Instruct the Jury at the Close of all the Evidence to Disregard Those Remarks.* In his opening statement the prosecutor told the jury that he planned to show similar incidents of fires for the purpose of "showing intent, scheme, design, and so forth." The testimony about another fire that night was very meager and the single witness who mentioned it never described it, never located it, and certainly did not connect the defendant with it.

At the close of all the testimony, counsel for defendant asked that the jury be instructed to disregard the prosecuting attorney's opening reference to prior similar offenses. That was not an unreasonable request and we think, under the circumstances, it should have been granted. Another fire had been mentioned in the testimony and the trial court frankly conceded that it was of no value. So when the sketchy testimony and the prosecuting attorney's statement are combined it is not improbable that some jurors may have developed the idea that the defendant was in fact connected with another fire. The accused had a right to have that possibility removed. Further, we have examined the instructions and we find that the standard instruction to the jury to disregard opening statements and closing arguments as evidence was not given.

To our holding on Point II should be added a comment for the guidance of the court in the event of retrial. Evidence of other incidents of arson would not be admissible unless that evidence can be shown to meet the test announced in many decisions. See *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804 (1954) and the numerous cases there cited. We adhere to the majority rule which is discussed in 22A C.J.S., Criminal Law § 682:

"The general rule, which is subject to exceptions stated infra §§ 683-690, is that, on a prosecution for

a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrevelant and inadmissible.''

Another point raised by appellant should be mentioned. It concerns the alleged right of a woman juror, who has been summoned and sworn in on the panel, to then assert her privilege of declining to serve. The answer to that question involves the constitutionality of Ark. Stat. Ann. §39-113 (Repl. 1962). Our Constitution and statutes provide that no woman can be compelled to do jury duty. However, the cited section requires her to decline service at the time she is notified ''and not thereafter.'' We do not pass on constitutional questions unless it is necessary to a disposition of the litigation. *Searcy County* v. *Stephenson,* 244 Ark. 54, 424 S.W. 2d 369 (1968).

Reversed and remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice. I dissent from the reversal of this case because I am not convinced that we could sustain a conviction of the witnesses who are alleged to be accomplices of appellant if the state's evidence were exactly what we have before us.

If these alleged accomplices, Jerry Turner, Larry Dunn and Divine Coggins, were tried on this testimony, we would have substantially the following:

Divine Coggins was with Leon Satterfield for about three and one-half hours beginning about 6:30 p.m. on the day the barn was burned. She rode around with him in Salem until about 9 p.m. when they went to a Dairy Queen there. Sometime about 9:30 they were joined by Jerry Turner and Larry Dunn. Appellant had been driving his own car and drove it at all times

on this evening. Appellant had been drinking Country Club Malt Liquor. The four left the Dairy Queen and shortly thereafter, appellant turned his car off the highway onto a dirt road along which the Wolf barn was located. After he pulled off the highway, appellant made some statement about the barn, either to the effect that the barn would "burn good" or said: "There's a barn there we missed." Jerry Turner responded that the barn was full of hay and appellant remarked: "That will make it burn better." When appellant said something about burning the barn, the others told him not to and said he had better not. When appellant was talking, he wasn't really making much sense about anything. He just jabbered but the main thing he was talking about was burning the barn.

Jerry Turner, while in the car with appellant, had seen a fire about five miles away from the Wolf barn some 15 or 20 minutes earlier. This fire was never identified as to place or nature. Jerry Turner knew when appellant made his remarks that he was talking about burning the barn. Appellant did not say he was going to burn the barn and was laughing and talking when he made the remarks mentioned. The party arrived at the barn about 30 or 45 minutes after leaving the Dairy Queen. Appellant turned around, parked his car, jumped out and went toward the barn. As he walked, he was laughing and hollering as one does when drinking. He went to the barn which was about 25 yards from the road. No one went down to the Wolf barn except appellant and none of the others got out of the automobile at that place. Jerry Turner denied knowing that appellant was going to burn the barn prior to the time the car was stopped and appellant got out. He was not sure of appellant's intention even then. After appellant returned to the automobile, the others felt that he had set the barn on fire because they saw a blaze on the side of the barn nearest the spot where appellant had parked his automobile. Divine Coggins did not see the fire until appellant was turning his car back onto the highway. On the way back to Salem,

they met Pat Dunn, Larry's sister, and Divine Coggins got in a car with her and returned to Salem. Later, en route to Salem, the three remaining members of the party had to fix a flat tire on appellant's car. While the boys were fixing the flat tire, someone hollered to them that a barn was afire out there. They went back to the Wolf barn and watched the fire for five or ten minutes. About 25 minutes had elapsed from the time they left the barn until they started back. When they left, Jerry Turner and Larry Dunn rode back to Salem in a car driven by one Junior Ross.

The latest case in this court in which a similar question was considered is *Burke* v. *State*, 242 Ark. 368, 413 S.W. 2d 646. There we sustained a conviction of arson on the testimony of an alleged accomplice. The crime was the burning of a barn containing hay. In that case, Baram Powell, the alleged accomplice, had been seen in the company of the principal in the vicinity of the burned property on the evening before the fire. The parties were drinking on that evening and drove by the property at least three times. On the night of the fire, Burke and Baram Powell and Burke's wife returned to the scene. Burke and Powell got out of Powell's pick-up truck in which they were riding, climbed a fence and walked several yards out toward the barn. When in sight of the barn, Burke announced that he was going to burn it and Powell was going to burn another building. Powell said that he would not and went back to the pickup truck. He got in the truck with Burke's wife and she drove the truck some distance, turned it around and drove back near the place where Burke and Powell had crossed the fence. Burke then climbed back across the fence and got into the pickup truck, at which time the fire was going pretty good. There was testimony that Paul Burke had made the statement that he and Powell were supposed to have burned the barn but that Powell and Burke's wife had backed out and he burned it himself.

In sustaining the conviction, we said that the evidence was sufficient to support the jury's finding that

the witness was not an accomplice. In that opinion, we restated the proper test to be applied in questions of this sort. We there said:

"In the case of *Simon* v. *State*, 149 Ark. 609, 233 S.W. 917, this court said:

'The test, generally applied to determine whether or not one is an accomplice, is: Could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abetter upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice.

\* \* \*

The term "accomplice" cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related, but distinct offense. To constitute one an accomplice he must take some part, perform some act, or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence, acquiescense, or silence, in the absence of a duty to act, is not enough, however reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice. Nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime.'

This court has defined an accomplice as one who could himself be convicted of the crime charged against the defendant, either as principal or accessory. *Henderson* v. *State*, 174 Ark. 835, 297 S.W. 836."

In *Butt* v. *State*, 81 Ark. 173, 98 S.W. 723, the contention was made that the question whether a witness was an accomplice should have been submitted to the jury. It was held that the failure to submit the question was not error, since mere silence in the presence of a crime or mere failure to inform the officers of the commission of a crime did not make one an accomplice. Even concealment of a crime, to constitute one an accessory thereto, requires some affirmative act which tends to conceal its commission or a refusal to give knowledge when sought by officials. The mere passive failure to disclose the crime is not sufficient. *Davis* v. *State*, 96 Ark. 7, 130 S.W. 547.

The majority place great emphasis on the word "abet" in the statute defining an accessory before the fact and in the statute defining the crime of arson. When the definition of the word "abettor" is examined, nothing is added to our own test for determining whether one is an accomplice. In Webster's New International Dictionary, Second Edition, in considering synonymous terms, we find the following:

> "An Accessory is neither the chief actor in an offense nor a person present at its performance, but one who *accedes* to or becomes involved in its guilt, by some act either previous or subsequent, as of instigating, encouraging, aiding, or concealing, etc. An Abettor is one who is actually or constructively present at the commission of the deed and contributes to it by moral or physical force. An accomplice is one who with criminal intent participates in the commission of an offense, whether as principal, abettor, or accessory."

In Black's Law Dictionary, we find the following:

> "ABET. A French word combined of two words 'a' and 'beter'—to bait or excite an animal. It includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in

the crime. *People* v. *Terman,* 4 Cal. App. 2d 345, 40 P. 2d 915, 916.

To encourage, incite, or set another on to commit a crime. This word is always applied to aiding the commission of a crime. To abet another to commit a murder is to command, procure, or counsel him to commit it, Old Nat. Brev. 21; Co. Litt. 475; to command, procure, counsel, encourage, induce, or assist, *Short* v. *Commonwealth,* 240 Ky. 477, 42 S.W. 2d 696, 697; to encourage, counsel, induce, or assist, *State* v. *Watts,* Nev., 296 P. 26. To facilitate the commission of a crime, promote its accomplishment, or help in advancing or bringing it about. *State* v. *Lord,* 42 N.M. 638, 84 P. 2d 80, 86. It includes knowledge of wrongful purpose of perpetrator. *Daniels* v. *State,* 58 Ga. App. 599, 199 S.E. 572, 577. *State* v. *Kneedy,* 232 Iowa 21, 3 N.W. 2d 611, 615. *People* v. *Stein,* 55 Cal. App. 2d 417, 130 P. 2d 750, 751 * * *

'Aid' and 'abet' are nearly synonymous terms as generally used; but, strictly speaking, the former term does not imply guilty knowledge or felonious intent, whereas the word 'abet' includes knowledge of the wrongful purpose and counsel and encouragement in the commission of the crime. Forgery, *People* v. *Dole,* 122 Cal. 486, 55 P. 581, 68 Am. St. Rep. 50; *Raiford* v. *State,* 59 Ala. 106; Violation of law against free passes. *State* v. *Ankrom,* 86 W. Va. 570, 103 S.E. 925, 927; Crime against nature, *State* v. *Start,* 65 Or. 178, 132 P. 512, 513; Robbery, *People* v. *Powers,* 293 Ill. 600, 127 N.E. 681, 682.

Instigate synonymous (malicious prosecution) *Hughes* v. *Van Bruggen,* 44 N.M. 534, 105 P. 2d 494, 499.

'Abet' smacks more of technical terminology than does the word 'aid', but it is almost synonymous with the word 'aid'. Assault and battery,

*Gentry* v. *State*, 65 Ga. App. 100, 15 S.E. 2d 464, 465.

\*   \*   \*

ABETTOR. In criminal law. An instigator, or setter on; one who promotes or procures a crime to be committed. Old Nat. Brev. 21. One who commands, advises, instigates, or encourages another to commit a crime; a person who, being present or in the neighborhood, incites another to commit a crime, and thus becomes a principal. See *State* v. *Baldwin*, 193 N.C. 566, 137 S.E. 590, 591.

Must have rendered assistance or encouragement to the perpetrator of the crime with knowledge of his felonious intent; offense of 'aiding and abetting' being committed by person present who does some act or speaks some word aiding the actual perpetrator of the crime. *Combs* v. *Commonwealth*, 224 Ky. 653, 6 S.W. 2d 1082, 1083. Must aid or commit some overt act or act of encouragement. *Long* v. *Commonwealth*, 288 Ky. 83, 155 S.W. 2d 246, 247. One who so far participates in the commission of the offense as to be present for the purpose of assisting if necessary. *State* v. *Epps*, 213 N.C. 709, 197 S.E. 580, 583.

The distinction between abettors and accessories is the presence or absence at the commission of the crime. Cowell; Fleta, lib. 1, c. 34. Presence and participation are necessary to constitute a person an abettor. 4 Sharsw. Bla. Comm. 33; *Bradley* v. *Commonwealth*, 201 Ky. 413, 257 S.W. 11, 13.''

I find nothing to indicate that either of Satterfield's companions took any part or performed any act in furtherance of the crime. Nor do I find any evidence of duty on their part to the owner of the property, making it incumbent upon them to prevent the crime. Neither do I find any evidence that they contributed to the

commission of the crime by moral or physical force. Certainly we could not sustain a finding that they commanded, assisted, procured, counseled, encouraged, incited or set Satterfield on to burn the barn.

I am not unaware of the case of *Boyd* v. *State*, 215 Ark. 156, 219 S.W. 2d 623, cited by the majority. I think that it is distinguishable. A cousin of the alleged accomplice was charged with possession of stolen goods. The husband of the alleged accomplice, an employee of the owner of the stolen property, testified that both his wife and her cousin were with him at the time he stole the goods, knew that they were stolen, and aided and abetted him in the theft. He stated that his wife asked him not to take the property and warned him that he would get into trouble. The wife was charged with the same offense as her husband. In view of the testimony of the husband, the court held that the question whether she was an accomplice should have been submitted to the jury, even though her own testimony would not have incriminated her.

While I agree that it would have been the better practice for the court to give the requested cautionary instruction about the prosecuting attorney's reference to prior offenses in his opening statement, I do not feel that its failure to do so was reversible error. The prosecuting attorney's opening statement is not in the record. In ruling on the appellant's request for an instruction, the trial court said that the prosecuting attorney made the statement that there would be some testimony relating to other incidents but didn't introduce it. In a hearing on the motion for new trial, the trial judge stated that the prosecuting attorney did mention in his opening statement that the state planned to show that there were similar incidents but it would be for the purpose of showing intent, scheme, design, etc. Accepting the court's statements at full face value and drawing all inferences possible therefrom in favor of appellant, I cannot see any prejudice in refusing this

instruction when the prosecuting attorney failed in his efforts to show the similar incidents, particularly when his opening statement properly limited the purpose for which such evidence could have been considered. The requested instruction might have served only to re-emphasize the prosecuting attorney's opening statement to the prejudice of the defendant.