BREED *v.* STATE.

4145 132 S. W. 2d 386

Opinion delivered October 23, 1939.

*W. S. Atkins,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Asst. Atty. General, for appellee.

BAKER, J. Two questions are raised by this appeal from the conviction for arson. The first of these is that the court erred in refusing to give instruction No. 7 as requested by defendant. That instruction reads as follows: "You are instructed that although you may believe the testimony of the witnesses, E. R. Jarvis, Chas. Crosnoe and Chris Wheaton, you could not convict the defendant on their testimony unless you find that their testimony is corroborated by other evidence that connects the defendant with the crime; and you are further instructed that such other evidence is not sufficient unless it shows affirmatively that the defendant was connected with the commission of the crime, and all of the evidence in the case taken together must be sufficient to convince you of the defendant's guilt beyond a reasonable doubt before you can convict the defendant."

The court modified the instruction by striking from it the name of Chas. Crosnoe, who was charged by appellant with being an accomplice. The court gave the instruction as asked after amending by striking from it the name of this witness. The court also gave instruction No. 6 as asked for by appellant after amending it to tell the jury that the defendant could not be convicted unless the testimony of an accomplice was corroborated, and the jury was satisfied of the guilt of the appellant beyond a reasonable doubt on the whole case. The court instructed the jury by an addition to No. 6 as follows: "And if you find from the evidence that the witness Chas. Crosnoe was an accomplice, then you are told that you cannot convict the defendant unless his testimony is corroborated by other testimony in the case, which convinces you of his guilt beyond a reasonable doubt."

Appellant insists that the court erred in not telling the jury as a matter of law that Crosnoe was an accom-

plice, instead of submitting to the jury the evidence in that regard, under the above instructions.

Without attempting to set forth all the evidence in this case with any degree of detail, it may be said that E. R. Jarvis, who operated a restaurant at Hope, Chris Wheaton, a negro, who lived at Hope and sometimes worked for Jarvis, Chas. Crosnoe and appellant, Breed, all were alleged to have gone from Hope, Arkansas, at night to Ashdown to burn a hotel building at that place. Jarvis had contracted for and paid some money in the purchase of this hotel, had increased the insurance from $10,000 to $20,000, according to plan to burn the building and collect the insurance. Jarvis and Wheaton had entered pleas of guilty just prior to the time of trial, and they testified with considerable detail as to the part taken in the plans to burn the hotel by appellant, Breed. Crosnoe, who is also a confessed incendiary artist, testified that he had been approached by Jarvis and Breed prior to the time of this fire, and that he reported to the chief of police at Hope the information he had received from Jarvis, and was advised to enter into the arrangement with Jarvis and keep him, the chief of police, advised as to their actions. Crosnoe testified to this fact and says he advised the chief of police of the progress of the plan. He is corroborated by the chief of police, who informed Mr. Sanderson, sheriff of Little River county.

We are prepared to believe this statement and think it not unreasonable that the jury might have done so as the undisputed evidence discloses that there were minute details arranged in gathering together and moving to the hotel building to be destroyed gasoline in wooden barrels for containers where it was handled by Wheaton, who was the only man in the house at the time the gasoline was distributed so as to be most effective in the fire. Some of these matters were known by the sheriff, and when Wheaton set fire to the gasoline and ran from the building, he was caught and arrested while gasoline was still burning on his clothing. Crosnoe says that Breed came for him that night and took him to Ashdown. Breed's statement is that Crosnoe came for him and took

him to Ashdown on that occasion. Jarvis had furnished the car in which these two men went to Ashdown, and according to his statement he delivered possession of it to Breed. He says Crosnoe was to return in it to pick up Wheaton. Wheaton says Breed was to do this.

Crosnoe stated that they met Jarvis, who asked about Wheaton and another negro who were to deliver the gasoline on a truck. They had not met these negroes as it was understood they would. In a short time they left ostensibly, at least, to locate them. They were several miles away when he, Crosnoe, saw the flash when the building was set on fire. He 'phoned the chief of police at Hope, telling him the fire had been set.

There are many important and material facts substantial in effect not mentioned, some of which tend strongly to show appellant's connection and guilty participation in the crime, or at least the jury might have well so found therefrom. To set all these out would unnecessarily extend this opinion.

It is earnestly insisted by appellant that the trial court should have told the jury as a matter of law that the undisputed evidence showed that Crosnoe was an accomplice, and that, therefore, instruction No. 7 should have been given without modifying it. It told the jury that Jarvis, Crosnoe and Wheaton were accomplices, and that Breed could not be convicted upon their uncorroborated testimony.

We most heartily agree with this contention on the part of the appellant as to the law, that is to say that defendant might not be convicted on the uncorroborated testimony of an accomplice, but we do not agree with appellant's contention as to the facts. It is true that without explanation Crosnoe would appear to be as deeply involved in the criminal conspiracy as Breed or Wheaton, but we have the explanation given that he was acting under the instructions and advice of the chief of police of Hope, Arkansas; that he was reporting to the chief of police the details, progress and development of the conspiracy to burn this piece of property; that he knew

these reports were being used to entrap those with whom he was daily associated. His conduct, at least, makes a question of fact for the jury to determine.

It may be possible, and perhaps is highly probable that Crosnoe was not motivated by any high ideals in regard to law enforcement or public welfare. In fact, his designs may have been extremely selfish and sinister. He may have intended to profit, at least, by the good will of the officers at the expense of the capture of his boon companions, in addition to that gained from the crime, but notwithstanding such surmises, unless he actually participated in a crime he was not an accomplice. In other words, we think it may be asserted, that his deception of his friends, his betrayal of their confidence, his going with them to lend color to his pretended mental attitude are not in themselves criminal in their nature, and this is particularly true providing the jury did not find that he had actually intended to participate in the arson. The test is not whether a jury should have convicted him, had he been on trial; but the court submitted properly the question in this case of his actual participation, for the determination of the jury; that is to say if Crosnoe was found to be an accomplice, they could not have convicted the defendant upon his uncorroborated evidence.

The rule is that, after conviction by a jury, the evidence will be given that consideration most favorable to the state. This has so frequently been stated no authority need be cited now.

Therefore, it may be said that the jury elected to take the view that Crosnoe was not a participant in the crime, but was acting under the direction and instruction of a peace officer of the state.

The appellant, also, argues that the evidence in this case is not sufficient to corroborate the testimony of the accomplices, and does not warrant a conviction. The force of this argument must be regarded as spent or lost unless Crosnoe be regarded as an accomplice. We think the jury found that he was not one. The state is entitled to that consideration.

On the other hand, if this testimony be considered from appellee's viewpoint there is sufficient testimony of a substantial nature to support the finding of the jury. The rule is that the evidence independent of that of the accomplice, must tend to connect the defendant with the commission of the crime.

It need not be such as considered wholly apart from the testimony of the accomplice, to warrant a conviction. The rule in this regard was rather clearly announced in a somewhat recent case. *Shaw* v. *State,* 194 Ark. 272, 108 S. W. 2d 497. It was there announced: "It is sufficient to say that this was purely a question for the jury. They believed the testimony of Scott, and there is nothing in the evidence to show that it was physically impossible for the witness to have recognized the appellants as he said he did. The testimony of Scott, independent of that of the accomplices, tended to connect the appellants with the commission of the crime, although it might not have been sufficient of itself to convict them. This satisfied the rule. The sufficiency of the corroborating evidence was a question for the jury and, together with the testimony of the accomplice, it is clearly sufficient to support the verdict."

Jarvis, who had contracted to purchase this hotel, and who had paid down part of the purchase money, had procured $20,000 insurance instead of $10,000 upon it prior to that time, testified that he took appellant and Chris Wheaton to the hotel in order that they might inspect it and examine it to see if it could be burned. Of course, they wanted a fire that would result in a total destruction of the building. Jarvis also says that while he was in discussion with Mr. Oliver, the agent of the owner of the building, that Breed and Wheaton were free to go about the building and make this investigation. Mr. Oliver corroborated Jarvis in this respect. He says that Wheaton and Breed were there, and that they did not remain with Jarvis and Oliver, who were discussing some detail of the trade or possession of the property. The appellant denies that he was there for the purpose of determining if the building could be

burned, although he admits his presence there on that particular occasion and explains that he was there looking the building over making estimates to paint or calcimine the place for Jarvis, the new owner. He says that he had made sufficient estimate to know that about 70 buckets of paint would be required to do this work. If he went into any detail in regard to paint or calcimine it was a matter of so little importance that it was not further developed in explanation of his presence there or conduct on that occasion.

The appellant also admits that he was present in Ashdown the night the house burned and met Jarvis at the hotel, and admits that he was told by Crosnoe that Jarvis was going to burn the hotel that night, admits that he returned to Hope prior to the time of the fire, and somewhere near midnight met the chief of police. He describes this meeting with the chief of police by saying he asked the chief of police what he was doing up so late. In answer to his inquiry the chief of police asked him what he was doing up so late. He admits that he said he wanted the chief of police to remember he had seen him that night if anything happened. He also admits that he denied that he had been to Ashdown the night of the fire when questioned by the sheriff. Upon trial he stated that he had on previous occasions aided in the burning of some houses.

There is, no doubt, that the evidence is sufficient to show that the fire was of incendiary origin. We have this appellant admitting he was present in the night time in a car furnished by Jarvis, at least, a few hours prior to the time the fire broke out; that he was associating with and accompanying Crosnoe and Wheaton, both of whom had formerly lent expert services and practices in similar arts as those under consideration. We have a man making a defense and establishing an alibi by the chief of police just before the crime was committed. All of this furnishes grounds for more than mere suspicion pointing to him as a participant. Both Wheaton and Crosnoe have pleaded guilty and explained their own sinister purposes and designs on these same occasions.

We examined the several authorities submitted to support the contention of the appellant and find no fault with them. In all that class of cases wherein the courts have said that the trial court should have told the jury as a matter of law that certain witnesses were accomplices, the facts were undisputed, or such authorities cited made clear that the particular witness was an acknowledged or confessed participant, or the facts were such that his participation in the offense was not questioned; therefore, the testimony given was that of an accomplice, and that fact was not a matter in issue. Not so in the case at bar. One of the typical cases cited was *Bass* v. *State*, 124 Tex. Cr. Rep., 62 S. W. 2d 127. In that case one of the witnesses, who had participated in the theft, and was an accomplice of the appellant, had testified and the court submitted to the jury for determination the matter whether the witness was an accomplice. This was held to be an error, because the facts were undisputed. The trial court held as a matter of law that Jarvis and Wheaton were accomplices. If there was a question whether a witness was an accomplice, that matter was a proper one to submit to the jury. It was so held in *Simms* v. *State*, 105 Ark. 16, 150 S. W. 113.

In the above cited case the trial court was importuned to do just what appellant argues should have been done in the case under consideration. The court refused the request and, as was held in the opinion, properly so ruled. Our court has stated the rule as follows: ''The only ground for reversal urged by defendant's counsel is that the court erred in refusing to give an instruction telling the jury that the defendant could not be convicted on the uncorroborated testimony of the witness Alice Walls. The effect of this instruction was to declare as an undisputed fact that Alice Walls was an accomplice; and if there is any dispute in the testimony on that point, it necessarily follows that the instruction was not correct, and that the court properly refused it . . .''

The rule has perhaps been several times approved by our court. One of the last cases was *Yates* v. *State*, 182 Ark. 179, 31 S. W. 2d 295.

The appellant also argues as a second ground for reversal that the evidence is not sufficient to support a conviction, particularly when considered apart from the testimony of accomplices. The argument made upon this proposition is based entirely upon the theory that Crosnoe was an accomplice, and his evidence on that account would have to be corroborated under the same rule that required corroboration of evidence given by Wheaton and Jarvis.

Since we have adopted and followed the rule that the evidence must be given that consideration which will support a verdict in favor of appellee, we think it would unnecessarily encumber this record to set forth with a reasonable degree of detail all of the evidence for the purpose. It will have to suffice in this case to say we have reached the conclusions, after a full and careful consideration of the evidence, that the evidence is of a substantial nature and warranted a conviction of the appellant, and, since there was no error in the submission of the case, the judgment should be affirmed. It is so ordered.