J. B. SMITHEY *v.* STATE of Arkansas

CR 80-51                                                    602 S.W. 2d 676

Supreme Court of Arkansas
Opinion delivered July 7, 1980
Rehearing denied August 25, 1980

*Vincent E. Skillman, Jr.,* of *Skillman & Darrett,* for appellant.

*Steve Clark,* Atty. Gen., by: *James F. Dowden,* Asst. Atty. Gen., for appellee.

ALLEN W. BIRD II, Special Chief Justice. J. B. Smithey was convicted in Mississippi County Circuit Court of public servant bribery in violation of Section 41-2703 (Ark. Stat. Ann. 1977 Repl.) He was sentenced to serve five years in the state penitentiary. His appeal raises three issues. First, he argues that the trial court should not have allowed the State to introduce tape recordings of conversations between himself and H. P. Cash or himself and John Cash. Second, he argues that the information filed against him in using the word "conspire" allowed the State to use evidence against him which otherwise would have been inadmissible. Third, Smithey argues that the testimony of a police officer who overheard statements made by him with the use of radio transmission should not have been admitted at the trial.

The testimony introduced at the trial tended to show that in August, 1978, H. P. Cash was charged with two felonies in Mississippi County. After his arrest, H. P. Cash went to see a deputy prosecutor and agreed to cooperate for a lenient sentence. He was told to keep in touch with the local authorities and help whenever he could. Sometime later, H. P. Cash was told by Smithey that what Cash needed was a "fixer." Smithey explained that Cash needed to go see "the man" and Smithey could arrange it. Smithey explained to H. P. Cash that "the man" was Henry Swift, who at that time was deputy prosecuting attorney for the Osceola District of Mississippi County, Arkansas. Several days after the meeting with Smithey, H. P. Cash returned to the grocery store and was told that "the man" wanted $25,000 to go along with the arrangement that H. P. Cash had already made with the deputy prosecutor in another county.

Later after entering a plea of not guilty, Cash was ad-

vised by Swift to go see Smithey who would tell him what to do. Subsequently, H. P. Cash went to see the deputy prosecutor for Crittenden County and told him of the conversations with Smithey and Swift. The deputy prosecutor called in police officers who made arrangements to place a microphone on Cash and in his truck. Following other conversations between Cash and Smithey, it was agreed that $10,000 would be paid in November, 1978, and $15,000 in January, 1979.

Subsequently, H. P. Cash changed his plea to guilty was sentenced and placed in jail. John Cash went to see Henry Swift and asked why H. P. Cash was placed in jail. Swift told John Cash not to worry that he, Swift, would have him out the next day. A microphone was placed on John Cash's body by the state police and he went to the defendant's store. The defendnat told John Cash that he, Smithey, would speak to Henry Swift to find out what was going on. John Cash offered $5,000 then and the defendant replied that would help. This conversation was recorded and the tape admitted into evidence at the trial.

Several days later there was another meeting at the defendant's store. John Cash had a microphone placed on his body again and the conversation between him and the defendant was recorded. During this conversation, the defendant told John Cash to bring $5,000 in a sack to the store. Before going to the store, John Cash called Henry Swift on a phone that was tapped. He asked Swift if dealing with the defendant was all right. Swift assured him it was, and said to go ahead and arrange for the $5,000. He said he would go easy on the rest until he could get H. P. Cash paroled into John Cash's custody. John Cash, with a microphone on his body, went to the store and handed the defendant the sack which the defendant put on a counter behind him. Moments later the state police came into the grocery store, arrested the defendant and picked up the cash.

The defendant claims that the tape recordings of conversations between himself and John and H. P. Cash should be suppressed as having been obtained in violation of his right against unreasonable search and seizure as guaranteed in the

Fourth and Fourteenth Amendments to the United States Constitution and in support of this claim, he relies on *Katz* v. *United States*, 389 U.S. 347 (1967). In *Katz* the FBI had attached an electronic listening and recording device to the outside of a public telephone booth from which Katz made telephone calls. The government claimed that since there was no physical penetration of the booth the defendant had no constitutional protection. The Supreme Court said that the Constitution protects people, not places, and the fact that there was no physical penetration was no longer relevant. The Court held that wherever a man may be, he will remain free from unreasonable search and seizure and that the attaching of the microphone to the phone booth violated his constitutional expectation.

The question of electronic eavesdropping was again presented in *United States* v. *White*, 401 U.S. 745 (1971). In that case, the trial court admitted the testimony of agents who conducted electronic surveillance. The testimony was of conversations overheard by warrantless electronic eavesdropping by government agents by means of a transmitter which an informer consented to wear during his meetings with the defendant. The Court of Appeals had reversed the lower court in holding that the testimony was not admissible relying on *Katz*. The Supreme Court disagreed saying that it could see no constitutional difference between a government informant writing down his conversation with a defendant for official use in testifying concerning them as had been approved in *Hoffa* v. *United States*, 385 U.S. 293 (1966), and transcribing his conversations with the defendant by either simultaneously recording them on his body or transmitting them to a recording device or other agent. The Court said:

> One contemplating illegal activities must realize the risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. In terms of what his course will be, what he will or will not do or say, we are unpersuaded that he would distinguish between probable informers on one

hand and probable informers with transmitters on the other (p. 752).

We believe that *White* states the rule to be followed and that the testimony of H. P. Cash, John Cash and the police officers concerning tape recorded conversations with the defendant and the recordings and transcripts were properly admitted by the trial court. When Smithey chose to have conversations with H. P. and John Cash, he had no constitutional right to protection of these conversations under the circumstances. Our state constitution requires no different result. See *Kerr and Pinnell* v. *State*, 265 Ark. 738 (1974).

The defendant further claims that there was not a proper foundation laid by the testimony of the police officer who heard conversations between the defendant, H. P. Cash or John Cash as well as conversations between Henry Swift and H. P. Cash or John Cash to introduce the recordings and transcripts. The defendant urges that since this evidence is not admissible, then there is not sufficient further evidence to sustain a verdict in the case. The testimony of the police officer in each case where a tape recording of conversations was admitted into evidence shows that he was physically present and observed the informant who had the microphone on his body in the presence of the one whose testimony was recordded and admitted into evidence. He also testified that a video tape recorder was used to visually record the movements of the speakers whose conversation was recorded. He testified that in each case he overheard the conversation transmitted electronically and simultaneously observed the action of the speakers, and that upon his review of the audio tapes found that they were the same as what he had heard at the time the conversations occurred. In addition, H. P. Cash and John Cash both testified that they had listened to the tape recordings and had reviewed the transcript of the conversation and the voices were recognizable to them as those of the defendant and Henry Swift. Uniform Rules of Evidence, Rule 901, Ark. Stat. Ann. § 28-1001 (1979) Repl.) states that authentication or identification is satisfied by the presentation of evidence sufficient to support a finding that the matter in question is what its proponent claims. By way of illustration it indicates that the identification of a voice whether heard firsthand or

through mechanical or electronic transmission or recording may be based upon opinion upon hearing the voice at the time under circumstances connecting it with the alleged speaker. In the recent case of *Williamson and Morris* v. *State*, 267 Ark. 46 (1979), we had occasion to review testimony introduced by the State of two conversations and a typewritten transcript made from them. In that case, the police officer testified that he reviewed the transcripts while he listened to the tapes and that both were accurate recording of the conversations. The argument was raised that the State did not call as witnesses the two officers who manned the recording device. We found that the requirements of Rule 901 had been satisfied even without the testimony of the two officers who had manned the recording device at the time the recording was made. In the case at hand, we find that the testimony of participants to the conversation as to the accuracy of the tapes and the transcript, the testimony of a police officer who actually heard the conversations occur transmitted to him electronically, who had reviewed the written transcript as compared to the tape recording, and the review of the video tape recording of the conversation satisfies the requirements of Rule 901 and the testimony was admissible. The evidence supplied by the tape recordings, transcripts and video tape recordings are sufficient to connect the defendant with his alleged co-conspirator, Henry Swift, such as to sustain a verdict of guilty in this case. See also *Gustafson* v. *State*, 267 Ark. 278 (1979).

The defendant also complains that the use of the word "conspire" without a specific charge of criminal conspiracy, permitted the State broader reign to offer testimony which it contended would show overt acts o r statements made in connection with the conspiracy. In following this argument to its logical conclusion, the defnendant argues that without using the word "conspire" the State would not have the same broad latitude in introducing evidence as it did in using that word in the information.

The argument calls into question the applicability of Uniform Rules of Evidence Rule 801(d)(2)(v), Ark. Stat. Ann. § 28-1001 (Repl. 1979). That rule provides that testimony about an out of court statement by a co-

conspirator of a party during the course and furtherance of a conspiracy is not hearsay. Actually, it was irrelevant whether the State used "conspire" or not. Our uniform rules are based upon the federal rules of evidence and therefore cases interpreting the federal rules are helpful in analysis of the Arkansas rules. The federal cases make clear that there need not be a conspiracy count in the indictment to make the provisions of Rule 801 applicable. In *United States* v. *Coppola*, 526 F. 2d 764 (10th Cir. 1975) that court held that a co-conspirator's statements were admissible where the conspiracy was not contained in the indictment but was proved at trial through independent evidence. In *United States* v. *Trowery*, 542 F. 2d 623 (3rd Cir. 1976) cert. den. 429 U.S. 1104, the court said that the absence of a conspiracy count has not bearing on the court's determination of the competency of co-conspirator evidence. *United States* v. *Williams*, 435 F. 2d 642 (9th Cir. 1970) cert. den. 401 U.S. 995, held that admissions and statements of a co-defendant are admissible as against the other even in the absence of a conspiracy charge where there is independent evidence of a concert of action; however the rule is not confined to those who are co-defendants at the same trial. We have had occasion to review the question of admissibility of statements of co-conspirators prior to the adoption of the Uniform Rules. In *Caton and Headley* v. *State*, 252 Ark. 420 (1972), we held that there must first be prima facie evidence of the existence of a conspiracy before acts and declarations of conspirators during the course thereof are admissible in evidence against their co-conspirator. See also *Cantrell* v. *State*, 117 Ark. 233 (1915). We believe that sufficient evidence was presented in the trial of the defendant to prove a conspiracy and to lay the foundation for the admissibility of statements made by the co-conspirator of the defendant, Henry Swift. We also agree with the federal cases mentioned above and hold that it is irrelevant whether the State uses the word "conspire" or not or in fact alleges a conspiracy since the basis for admissibility of the evidence objected to by the defendant is not the wording of the indictment or information but the independent evidence presented to prove that a conspiracy existed. In this case such evidence was present. We should also point out that the crime of bribery cannot occur without at least two parties being involved, one offering and one receiving; therefore, the

crime alleged would necessarily involve conspiracy and thus call into play Rule 801(d)(2)(v).

Finally, the defendant claims that the only evidence that would connect him with the crime of public servant bribery comes from his co-conspirators or accomplices, H. P. and John Cash. Ark. Stat. Ann. § 43-2116 (1977 Repl.) provides:

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corrobation is not sufficient if it merely shows that the offense was committed, and the circumstances thereof.

The evidence introduced by the State other than testimony of an accomplice included the statements by the defendant which were recorded and the recordings and transcripts introduced into evidence; the testimony of the prosecutor concerning statements made by Henry Swift to H. P. Cash in his presence advising Cash to go see the defendant; the testimony of an employee of the telephone company concerning various phone calls between the defendant and Henry Swift; the video tape recordings of various meetings between H. P. Cash and the defendant and John Cash and the defendant; the testimony by the police officers upon the arrest of defendant and finding the money near the defendant and the tape recordings of that conversation; the still photographs of various meetings between H. P. Cash and the defendant and John Cash and the defendant; and the recorded phone calls and conversations between H. P. Cash and Swift and John Cash and Swift. This evidence and other circumstantial evidence in the record corroborate the direct testimony of H. P. Cash and John Cash.

We find no reversible error in the record of the trial and therefore affirm the judgment.

FOGLEMAN, C.J., not participating.