Greg SHRADER *v.* STATE of Arkansas

CA CR 84-48                            678 S.W.2d 777

Court of Apeals of Arkansas
Division II
Opinion delivered November 7, 1984
[Rehearing denied December 5, 1984.]

18

*Matthew T. Horan,* for appellant.

*Steve Clark,* Att'y Gen., by: *Velda West Vanderbilt,* Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was arrested for conspiracy to commit capital murder. The state alleged appellant had attempted to hire Bill Smith to kill Dan Stewart and had committed the overt acts of obtaining a pistol and a silencer for Smith to use. Smith, however, reported the incident to Stewart and then disappeared for several weeks. When Smith returned, he cooperated with authorities by wearing a "body pack" to appellant's home several times, thereby recording conversations in which they discussed the killing. The last such visit by Smith was on Saturday, October 30, 1982. On Tuesday,

November 2, well after dark, officers went to appellant's home without a warrant and about midnight they arrested him. Appellant was taken to the sheriff's office and, after he was read his Miranda rights, he was questioned for about three hours.

Prior to trial, appellant filed a motion to suppress the in-custody statement, the statements recorded by means of the body pack worn by informant Bill Smith, and certain other physical evidence. In the alternative, appellant moved for all references to other crimes contained in the statements to be excluded from the hearing of the jury as being irrelevant to the crime charged. The motion was denied. After a five-day trial, appellant was convicted and sentenced to 20 years.

Appellant's first point for reversal is that the motion to suppress his three-hour midnight statement should have been granted since it was preceded by a warrantless arrest of appellant in his home despite the fact that there were no exigent circumstances and a warrant could have been obtained. In *Payton* v. *New York*, 445 U.S. 573 (1980), the United States Supreme Court held that the Fourth Amendment, made applicable to the states by the Fourteenth, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. Pointing out that "the simple language of the Amendment applies equally to seizures of persons and to seizures of property," the Court said:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home — a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from

unreasonable governmental intrusion." . . . Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 589-90.

*Payton* involved two appellants. The other appellant, Obie Riddick, was arrested at his home without a warrant. When the police knocked on the door, Riddick's young son opened it and they saw Riddick sitting in bed covered with a sheet. They entered the house and placed him under arrest. Before permitting him to dress, they opened a chest of drawers two feet from the bed in search of weapons and found narcotics and drug paraphernalia. Riddick was subsequently convicted on narcotics charges and the Supreme Court of the United States reversed the trial court's refusal to suppress the evidence found in the chest of drawers. In *United States* v. *Johnson,* 457 U.S. 537 (1982), the Court relied upon *Payton* to affirm a United States Circuit Court of Appeals' decision that held a defendant's written statement should be suppressed as fruit of an unlawful arrest where the statement was obtained after a warrantless arrest of defendant while he stood in the doorway of his home, after having opened the door in response to false identification by government agents.

The Arkansas Supreme Court, in *Jackson* v. *State,* 271 Ark. 71, 607 S.W.2d 371 (1980), applied *Payton* to remand the case for the trial court to determine if exigent circumstances existed to allow the warrantless arrest of the defendant at his home. The court said *Payton* held that:

> [T]he threshold of one's home cannot reasonably be crossed without a warrant in the absence of exigent circumstances. Although the defendant must none-theless stand trial the exclusionary rule prohibits introduction of any evidence seized pursuant to such an arrest . . . .

In the instant case, the trial court found that the appellant was arrested without a warrant and without

exigent circumstances. But the court held, and it is argued on appeal, that because the officers knocked on appellant's door, asked him to step outside, and arrested him on the front porch, the arrest was not unlawful as there was no actual entry into the home. We think *Scroggins* v. *State,* 276 Ark. 177, 182, 633 S.W.2d 33 (1982), indicates otherwise. There the court said:

> The State offers a parenthetical argument that Scroggins consented to leave the room and was actually arrested outside the room and, therefore, no *Payton* issue exists. The facts demonstrate why this argument is meritless. The officers held a gun on Scroggins and asked him to come out of the room; obviously there could be no free choice on the part of Scroggins in such a situation.

Here, the record shows that the officers had sufficient evidence by October 31, 1982, to constitute probable cause to believe that appellant was involved in a conspiracy to commit murder. However, they made no effort to obtain a warrant even though they had two working days to do so. We find appellant's arrest on the night of November 2, 1982, to be unlawful in light of *Payton,* and that the statement taken from him in the sheriff's office immediately after that arrest should have been suppressed. We therefore reverse and remand.

In view of the remand, we discuss those points which might arise in a new trial. Appellant contends that the trial court erred in refusing to suppress the body-pack tapes in their entirety, or at least those parts of the statements which contained references to a matter for which appellant had already been charged and had retained counsel. He relies on *Massiah* v. *United States,* 377 U.S. 201 (1964), which held that it was error for government agents to obtain and testify to incriminating statements made to an informer by a defendant who was represented by counsel, had been indicted, and had entered a plea of not guilty. In the instant case, however, appellant had not yet been charged with or arrested for the conspiracy to commit murder when he made the statements

which Smith recorded. An additional distinction is that Massiah had already retained an attorney to represent him on the charge he was questioned about. Here, although appellant had hired an attorney, it was to represent him on a charge of possession of a prohibited weapon — not conspiracy to commit murder.

The principle of law in this case is similar to that in *Kerr & Pinnell* v. *State*, 256 Ark. 738, 512 S.W.2d 13 (1974), where a convicted defendant became an informer and taped voluntary conversations with an unindicted accomplice. *See also Smithey* v. *State*, 269 Ark. 538, 602 S.W.2d 676 (1980). Those cases demonstrate that there was no constitutional right, federal or state, violated in the taping of the conversations in the instant case and that the trial court did not err in refusing to suppress the body-pack tapes.

Appellant's argument that certain portions of the tapes should be suppressed is directed toward references to an incident in which a pickup truck was searched after it crashed into a concrete embankment and was abandoned. In looking for the registration, an officer discovered a gun adapted for use with a silencer and a book on how to make a silencer. The officer testified that the vehicle was found to be registered in the name of appellant's brother, but also testified that he had seen the appellant drive the vehicle quite often and that appellant lived within 200 feet of where the accident occurred. Moreover, appellant's brother testified that, although the vehicle was registered in his name, the appellant really owned it and usually drove it.

The appellant was charged with possession of a prohibited weapon, and the possession of the weapon and the book was subsequently alleged as evidence of an overt act in furtherance of the conspiracy. However, Ark. Stat. Ann. § 41-105(1) (Repl. 1977) provides:

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

*See also King* v. *State,* 262 Ark. 342, 557 S.W.2d 386 (1977). We do not think it was error for the court to admit these tapes into evidence in their entirety.

Appellant next argues, in regard to the testimony of Bill Smith and Junior Brown, that the trial court should have instructed the jury that the testimony of an accomplice must be corroborated. The appellant's abstract contains an objection to the court's failure to give such requested instructions but the instructions are not abstracted and there is no reference to where they may be found in the transcript. For that reason we could not decide this point on its merits. *Pitcock* v. *State,* 279 Ark. 174, 178, 649 S.W.2d 393 (1983); *Green* v. *State,* 7 Ark. App. 175, 646 S.W.2d 20 (1983). However, because of the remand for new trial we think it necessary to discuss the issue to some extent.

In *Cate* v. *State,* 270 Ark. 972, 606 S.W.2d 764 (1980), the appellant was found guilty of conspiracy to commit criminal mischief. The charges stemmed from the destruction of a helicopter owned by a company in which Cate was the majority stockholder. Edd Conn, a codefendant and employee of the company, testified that he was approached by Cate about destroying the helicopter to collect the insurance on it. Conn enlisted the aid of Ken Doles and they set fire to the helicopter. The trial court instructed the jury that Conn and Doles were accomplices as a matter of law and that Cate could not be convicted upon the uncorroborated testimony of an accomplice. The court refused, however, to tell the jury that Conn's common-law wife was an accomplice as a matter of law, even though she tried to find some gasoline for Conn and Doles to use in burning the helicopter. The court submitted her status to the jury and this was affirmed on appeal because she testified that Conn had assured her that he would have nothing to do with the actual destruction of the helicopter. The Arkansas Supreme Court said:

> We hold, in the circumstances, that she was not an accomplice as a matter of law. Her complicity was a

fact issue. The jury could reasonably infer that her unsuccessful effort to find a gas can, with the knowledge of its intended use, was not made with the true purpose of aiding in the accomplishment of the criminal endeavor.

We think that *Cate* stands for the following points of law that are also involved in the instant case.

1. A conspiracy is a crime in and of itself, and it exists as *Cate* says "when one, for 'the purpose of promoting or facilitating the commission' of a criminal offense, agrees with another person or persons that he will engage or aid in committing the offense coupled with an overt act pursuant to the conspiracy." *See also* Ark. Stat. Ann. § 41-707 (Repl. 1977) and its Commentary.

2. A coconspirator may also be an accomplice. *Accord Spears, Cassell & Bumgarner v. State,* 280 Ark. 577, 660 S.W.2d 913 (1983), and *State v. Carey,* 285 N.C. 497, 206 S.E.2d 213 (1974).

3. A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Cate v. State,* 270 Ark. at 975 [quoting from Ark. Stat. Ann. § 43-2116 (Repl. 1977)].

4. Whether a witness is an accomplice is usually a mixed question of fact and law, and the finding of a jury as to whether a witness is an accomplice is binding unless the evidence shows conclusively that the witness was an accomplice. *Cate v. State,* 270 Ark. at 976 (citing *Wilson & Dancy v. State,* 261 Ark. 820, 552 S.W.2d 223 (1977)).

Applying the above points of law to the case at bar, we think under the evidence in the record now before us it would be proper to use AMCI 403 to submit to the jury the question of whether Junior Brown, who made the silencer for the gun which he was told was to be used to kill Dan

Stewart, was an accomplice. *See Robinson v. State,* 11 Ark. App. 18, 665 S.W.2d 890 (1984). But we think that the record before us presents a different situation as to Bill Smith.

Ark. Stat. Ann. § 41-305 (Repl. 1977) affords an affirmative defense to an accomplice who terminates his complicity (in accordance with the provisions of the statute) prior to the commission of the offense. Also, Ark. Stat. Ann. § 41-710 (Repl. 1977) affords an affirmative defense to prosecution for conspiracy to commit an offense to one who (in accordance with the provisions of the statute) terminates his participation in the conspiracy. We do not believe, however, that these sections eliminate the necessity for the corroboration of Smith's testimony. Smith had already committed the offense of criminal conspiracy by planning the commission of an offense and committing the overt act of helping to procure a silencer for the gun to be used in the planned offense. He may have a defense to liability for the crime of conspiracy and to being an accomplice, but his testimony against a member of the conspiracy must be corroborated.

We distinguish, in this regard, cases such as *Roleson v. State,* 272 Ark. 346, 614 S.W.2d 656 (1981) and *Breed v. State,* 198 Ark. 1004, 132 S.W.2d 386 (1939). In *Roleson* it is indicated that the accomplice status of a witness could be vitiated by duress imposed through a threat to her son. This simply means that because of duress one may not be an actual or real participant in the crime. The same principle applies to *Breed* where the court said the jury elected to take the view that a witness "was not a participant in the crime, but was acting under the direction and instruction of a peace officer of the state."

In *People v. Comstock,* 305 P. 2d 228, 234 (Cal. Dist. Ct. App. 1956) the court said: "The statutory requirement of corroboration is based primarily upon the fact that experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity." In 30 Am.

Jur. 2d *Evidence* § 1148 at 323 (1967), it is said that "a long history of human frailty and governmental over-reaching for conviction has justified distrust in accomplice testimony." We hold that Ark. Stat. Ann. § 43-2116 (Repl. 1977), requiring that the testimony of an accomplice be corroborated, applies to the testimony of Bill Smith as a matter of law under the circumstances of the record now before us. We point out, however, that we cannot predict the state of the record on retrial.

The appellant's last point has been addressed by what we have already said. Conspiracy is a separate crime. One may be charged with conspiracy to commit capital murder and with capital murder also. *Smith* v. *State*, 6 Ark. App. 228, 640 S.W.2d 805 (1982) (see the dissenting opinion). One could also be charged as an accomplice in the same case. *Cate* v. *State, supra.* There is no merit in appellant's argument that he was found guilty of a "conspiracy to conspire." *See Smithey* v. *State*, 269 Ark. 538, 602 S.W.2d 676 (1980).

Reversed and remanded for a new trial.

CLONINGER and CORBIN, JJ., agree.