Roderick L. HICKMAN *v.* STATE of Arkansas

CA CR 06-841                                260 S.W.3d 747

Court of Appeals of Arkansas
Opinion delivered August 29, 2007

*John P. Mazzanti, III*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Roderick L. Hickman appeals from his conviction for residential burglary. He raises three arguments for reversal: 1) the trial court erred in not issuing his requested jury instruction on disputed-accomplice liability regarding one of the State's witnesses; 2) the State failed to prove that he was an accomplice to burglary; 3) the trial court erred in denying his request for a continuance. Because we agree with appellant's first argument, we hold that the trial court erred in not issuing the disputed-accomplice liability instruction. Accordingly, we reverse appellant's conviction and remand for a new trial. Because we reverse and remand on that ground, we do not address appellant's continuance argument.

Appellant was charged as an accomplice to residential burglary in connection with the burglary of the home of Christine Haddad, in Dermott, Arkansas, on the Saturday following Thanksgiving in 2004. On December 1, 2004, Officer Glen Anderson met Icer Crouse, Haddad's grandson, to investigate a house burglary. Crouse had been staying at Haddad's home a few nights each week while Haddad recuperated from an illness at the home of her daughter (Crouse's mother).

Appellant concedes that the Haddad home was burglarized. The property taken from that home included a TV, keys, $200–300 cash, including coins, and a book of checks bearing Haddad's name. The Eudora Police Department subsequently faxed Anderson and informed him that one of the stolen checks had been cashed by Caleb Johnson. Johnson was subsequently arrested and gave police a statement explaining when the burglary occurred and who was involved. In his statement, he told police that it was appellant's idea to go into the Haddad house.

Appellant's grandmother, Ruby Douglas, lives next door to the Haddad residence. Their properties are separated by a waist-high fence. The testimony of various witnesses showed that on the day the burglary occurred, appellant was driving Douglas's silver or gray van and was accompanied by Johnson (appellant's cousin,

who had lived in Douglas's home on a prior occasion), James Earl Benton, and Corderia Black. When the van developed a flat, appellant drove into Dermott, arriving at Douglas's home. Douglas's son, Sammy, who was approximately ten years old at the time, was also at home.

Appellant and his companions asked Douglas to help them locate a tire. Before Douglas left her house to do so, she told appellant not to disturb other people in the neighborhood and not to go next door (to the Haddad home) because no one was home. Johnson accompanied Douglas at one point but returned to the home while she continued to look for a tire. After Johnson returned to the home, he went outside to smoke and when he did, he saw Benton pass a television over the fence to appellant, who put the television in the back of the van. Johnson then went back inside the Douglas home.

Johnson's testimony was corroborated by Sammy, who was eleven years old when he testified. He said that appellant was driving a van with a flat tire; that he saw Benton pass a TV over the fence to appellant, who put the TV into the van; and that appellant and his companions seemed to be in a hurry to leave.

When Douglas returned home later that afternoon (without a tire), she noticed that her van had been moved toward the back of the yard and that the tire was still flat. She said that appellant seemed anxious to leave. Appellant and his companions left approximately thirty minutes after she returned, still driving on a flat tire.

Johnson testified that before they arrived at Douglas's home, there was no money in the van but after they left, Benton had some coins. He also saw Haddad's checks and a television in the back of the van that was covered.

Lenora Robinson testified that appellant visited her home and asked if she wanted to purchase a television. When Robinson refused, appellant sold the TV to her neighbor, LaShona Williams. Williams testified that appellant said his grandmother was selling the TV, that he hooked up the TV, that she paid him for the TV, that appellant was driving his grandmother's van at the time, and that Johnson and Benton were with him.

At the close of the State's case, appellant moved for a directed verdict, arguing there was no proof that he acted as an accomplice to the burglary because there was no proof he aided or

assisted in entering the Haddad home for an unlawful purpose. The trial court denied the motion and the subsequent renewal of the same.

Appellant also proffered AMCI 403, concerning disputed-accomplice liability status, on the theory that Johnson was an accomplice in this case. The trial court refused to issue the instruction. The jury subsequently convicted appellant and he was sentenced to serve sixty months in the Arkansas Department of Correction.

## I. Sufficiency of the Evidence

Although we reverse based on the trial court's failure to provide the disputed-liability accomplice instruction, we first address the sufficiency of the evidence supporting a conviction before considering other trial errors to preserve appellant's right to be free from double jeopardy. See Grillot v. State, 353 Ark. 294, 107 S.W.3d 136 (2003).

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. See Jordan v. State, 356 Ark. 248, 147 S.W.3d 691 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Id. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Id. On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. Id.

A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201 (Repl. 2006). A criminal defendant is an accomplice of a defendant if he assists and actively participates in the crime. See Cook v. State, 350 Ark. 398, 86 S.W.3d 916 (2002). However, a defendant may also be liable as an accomplice where he renders the requisite aid or encouragement to the principal with regard to the offense at issue, irrespective of the fact that the defendant did not directly commit the offense. Id.

Moreover, when two persons assist one another in the commission of a crime, each is an accomplice and is criminally liable for the conduct of both. Id. A participant cannot disclaim

responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Id.* Factors relevant in determining whether a person is an accomplice include the presence of the accused near the crime, the accused's opportunity to commit the crime, and association with a person involved in the crime in a manner suggestive of joint participation. *See Releford v. State,* 59 Ark. App. 136, 954 S.W.2d 295 (1997).

Appellant does not dispute the evidence that the burglary took place, or that he took the TV from Benton, hid it in the van, and sold it to Williams. Rather, he maintains that the evidence is insufficient to demonstrate that he entered or remained unlawfully on the Haddad premises, that he solicited, advised, encouraged or coerced another individual to commit the offense of burglary, or that he aided, agreed to aid, or attempted to aid in the planning or commission of the offense. As such, he argues that, at most, he is guilty of theft or theft by receiving, but not residential burglary.

We disagree. It is true that there is no direct evidence that appellant personally entered the home but the State was not required to prove that he did so. *See Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996); *Bradley v. State,* 8 Ark. App. 300, 651 S.W.2d 113 (1983). Substantial evidence supports the conclusion that committing the burglary was appellant's idea, that he assisted in removing one of the stolen items, even if he did not enter the Haddad residence, and that he transported and sold the stolen item. That is sufficient proof that he acted as an accomplice to the Haddad burglary. *See Bradley, supra* (affirming a burglary conviction where there was no evidence that the defendant entered the residence but there was evidence that he planned the burglary and sold the stolen goods). Accordingly, the trial court did not err in denying appellant's motion for a directed verdict.

## II. *Disputed-Accomplice Liability Instruction*

Nonetheless, we reverse appellant's conviction and remand for a new trial because the trial court erred in refusing to issue the jury instruction regarding Johnson's disputed-accomplice liability status. Appellant proffered AMCI 403, which stated that if the jury found that Johnson was an accomplice, his testimony must be corroborated by other evidence tending to connect appellant with the commission of the offense. The parties argued at length

regarding whether Johnson was an accomplice. The trial court ultimately refused to issue the instruction, finding that Johnson was not an accomplice.[1]

It is clear that a defendant's mere presence at the scene or negative acquiescence and passive failure to disclose a crime are neither separately nor collectively sufficient to make him an accomplice. *See Hutcheson v. State*, 92 Ark. App. 307, 213 S.W.3d 25 (2005). Further, knowledge that a crime is being or is about to be committed usually cannot be said to establish accomplice liability; nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime. *Id.* In short, absent a legal duty, presence, acquiescence, silence, knowledge, or failure to inform an officer of the law is not sufficient to make one an accomplice. *Id.* Our law is well settled that a witness's status as an accomplice is a mixed question of law and fact, and that when the status of a witness presents issues of fact, the defense is entitled to have the question submitted to the jury. *See King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996).

Here, the instruction should have been given because there was evidence presented upon which the jury could have concluded that Johnson was an accomplice. Johnson did not merely acquiesce to the burglary or merely fail to inform the police of the offense. Rather, the evidence was sufficient to allow the jury to reasonably infer that Johnson knew when the burglary was taking place, knew where it was taking place, and knew who was involved. He accompanied appellant and Benton when they left the scene of the crime; he knew that the stolen TV, checks, and money were transported in appellant's van, in which he also rode; he accepted a stolen check from Benton, whom he had seen giving a stolen TV to appellant, and whom he had seen counting coins in the van that were not present prior to the burglary; he was present when the TV was sold to Williams; and he did not reveal the information to authorities until he was arrested for using the stolen check. These facts indicate Johnson's joint participation in the burglary; therefore, the trial court should have issued the disputed-accomplice liability instruction.

---

[1] Johnson was charged with forgery of the check that he attempted to cash but was not charged with burglary.

Reversed and remanded for new trial.

PITTMAN, C.J., HART, ROBBINS, GLOVER, BAKER and MILLER, JJ., agree.

GLADWIN and BIRD, JJ., dissent.

SAM BIRD, Judge, dissenting. I disagree that the trial court erred in refusing to issue the disputed-accomplice instruction as it relates to Caleb Johnson. Under cases decided by our supreme court, I see no need to remand this case for new trial.

The term "accomplice" cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related, but distinct offense. *McGehee v. State*, 348 Ark. 395, 72 S.W.3d 867 (2002); *Hicks v. State*, 271 Ark. 132, 607 S.W.2d 388 (1980); *Burke v. State*, 242 Ark. 368, 413 S.W.2d 646 (1967). A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person solicits, advises, encourages, or coerces the other person to commit the offense; aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or, having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense. Ark. Code Ann. § 5-2-403(a) (Repl. 2006).[1] A person cannot be convicted of a felony based upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005).

In *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996), a murder conviction was remanded for retrial because the jury was not given instruction on the disputed-accomplice status of State's witness Vernon Scott. The supreme court recited evidence that Scott knew of ill-will between the co-defendants and their victim, who had knowledge about another murder; that Scott was to be paid with rock cocaine, and indeed was so paid, in exchange for luring the victim to the co-defendants' reach; that within five minutes of luring and leaving the victim, Scott heard a flurry of

[1] In *Hutcheson v. State*, 92 Ark. App. 307, 213 S.W.3d 25 (2005), Hutcheson's silence, knowledge, concealment, and failure to inform law enforcement officers of sexual assaults against her child made Hutcheson an accomplice to the assaults because she had a legal duty to protect the child.

gunshots and had the immediate thought that "they done shot that boy"; and that Scott initially denied knowledge of the co-defendants' involvement in the crime.

In *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988), Adam Ford and King McNichols were convicted of burglary and theft in connection with items taken from a liquor store. The supreme court reviewed the following evidence and held that the trial court did not err in refusing to instruct the jury on the accomplice status of Jo Ann Willis, Johnny Wyllis, and William Harvey:

> On the morning following the burglary, [Jo Ann Willis] awoke to find McNichols, appellant Ford and McNichols' nephew, together with liquor and cigarettes, in her house. She stated that she did not know where the liquor came from, that she thought it may have been stolen, but she did not know. In any event, she asked the three parties to help her put it in the car so that she could take it away from the house. Jo Ann drove the appellants McNichols and Ford, McNichols' nephew, Johnny Wyllis, and another party to a tavern, Fat Daddy's, where McNichols sold portions of the stolen liquor to the tavern owner, William Harvey. Jo Ann's testimony was corroborated to some extent by Johnny Wyllis.

296 Ark. at 13, 753 S.W.2d at 260; *see also Shrader v. State*, 13 Ark. App. 17, 25, 678 S.W.2d 777, 781 (1984) (stating that it would be proper to submit to the jury the question of whether the person who made the silencer for a gun, which he was told was to be used to kill the victim, was an accomplice).

In light of these cases, I believe that this court should overrule *Robinson v. State*, 11 Ark. App. 18, 665 S.W.2d 890 (1984), which is the sole decision discussed in Hickman's brief to support his position, and which the majority opinion does not even mention. In my view, the *Robinson* court wrongly accepted the appellant's argument that the trial court erred in refusing to instruct the jury so as to allow it to determine the status of four State's witnesses who had ridden with him to a lake: three of them fished while he was apparently stealing boat motors, and the fourth lay sick in the car while the theft was going on. There was various testimony that Robinson "toted" a motor to the car, put two motors in the back of the car, and stated that he planned to sell them in Pine Bluff. One witness stated that "they told [him] he shouldn't take the motors but he said he needed money," and that he asked them to go to Pine Bluff but "we said no, you know, we

didn't want to have nothing to do with it." 11 Ark. App. at 21, 665 S.W.3d at 891. I agree with the dissenting judge in *Robinson* that the evidence was insufficient to make the status of these witnesses a question for the jury to decide.

Here, Caleb Johnson was guilty of forgery in connection with using a check that Hickman stole from Haddad's house. Johnson was not charged with residential burglary. His testimony, corroborated by young Sammy, was that he watched Benton pass the television over the fence to Hickman; Johnson further testified that he "didn't want to be involved" and went back inside Ruby Douglas's home once he saw the television being loaded into the van. Johnson had no duty to report this crime to authorities. The evidence presented — that Johnson saw other persons pass the television over the fence and load it into the van, that he knew that the television and the checks were in the van, and that he was present when the television was sold — does not suggest any way in which he aided or abetted the crime of residential burglary.

Thus, there was nothing for the jury to decide about Johnson's status as an accomplice, and the circuit court did not err in refusing to give the jury AMCI 403. I would affirm Hickman's conviction.

GLADWIN, J., joins.